**Kristy SCHWARM, on behalf of herself and others similarly situated, Plaintiff,**

v.

**Henry CRAIGHEAD, an individual, District Attorney Technical Services, Ltd., a Nevada corporation, d/b/a Computer Support Services, a/k/a Check Restitution/Prosecution Program, John Q. Lawson, an individual, Mary A. Chase, an individual, Does 1 through 20, Defendants.**

**No. CV.S 05 1304 WBS GGH.**

United States District Court, E.D. California.

March 7, 2006.

Ronald Wilcox, San Jose, CA, O. Randolph Bragg, Chicago, IL, Paul Arons, Friday Harbor, WA, Scott Shoblom, Santa Rosa, CA, for Plaintiff.

Kelley M. Dowell, Sacramento, CA, Timothy J. Ryan, Sacramento, CA, for Defendants.

### ORDER RE: MOTION FOR CLASS CERTIFICATION

SHUBB, District Judge.

Named plaintiff Kristy Schwarm has filed a class action against defendants Henry Craighead and his company, District Attorney Technical Services, Ltd. ("DATS"), d/b/a Computer Support Services; John Lawson; Marcy Chase; and Does 1 through 20 ("defendants"). This action arises from plaintiff's allegation that defendants are debt collectors who, under color of law, are making unlawful threats, demanding unlawful fees, and disregarding the requirements of the California Penal Code §§ 1001.60–1001.67, which authorizes the district attorney to contract with a private entity for "check restitution/prosecution programs." Plaintiff now moves for class certification pursuant to Federal Rule of Civil Procedure 23.[1]

### I. Factual and Procedural Background

On June 28, 2005, plaintiff filed her complaint in this action, containing causes of action for: (1) violation of her right to due process under 42 U.S.C. § 1983, (2) violation of her right to due process under the California Constitution, (3) violation of the FDCPA, (4) fraudulent misrepresentation, and (5) negligent misrepresentation.

Defendant DATS operates over two dozen "check restitution/prosecution" programs throughout various California counties. (Compl. ¶ 12.) These are privately-run bad check diversion programs which function by contract with local government entities under the statutory guidance of California's Bad Check Diversion Act ("BCDA"), Cal.Penal Code §§ 1001.60–1001.67. (Compl. ¶ 20.) In exchange for a small fee, DATS will process the county's bad check cases in an effort to recover the unpaid funds from the dishonored checks. (Compl. ¶ 20.)

Merchants within participating counties send dishonored checks directly to DATS. (Pl.'s Mot. for Class Certification 4.) Once the dishonored check is received by DATS, a letter under the letterhead of the respective law enforcement agency is mailed to the bad check writer. (Compl. ¶ 20.) These letters advise the check writer of a pending investigation, reference California Penal Code § 476(a), and request payment for the amount of the bad check, bank fees, bad

---

1. On February 6, 2006, plaintiff filed a motion to strike or seal her bank statements, which were filed as Exhibit A to defendants' opposition to this motion. Because that motion was not properly noticed, the court will not consider it at this time. *See* Local Rule 78–230 ("[m]otions defectively noticed shall be filed, but not set for hearing," and "the moving party shall file and serve a new notice of motion setting forth a proper time and date.").

check fees, and diversion fees. (*Id.* ¶ 21.) In addition, these letters advise the check writer of a mandatory financial management class. (Pl.'s Mot. for Class Certification 5.) If the fees are paid within a prescribed period of time, the diversion fee is waived, and attendance at the mandatory financial management class is no longer required. (*Id.*) If the fees are not paid, more letters will follow informing the check writer of the possibility of prosecution and criminal sanctions. (*Id.* at 5–6.) Ultimately, upon the check writer's continued refusal to pay, DATS may order a copy of the check writer's bank records, pursuant to Government Code § 7480(b). (*Id.* at 6.)

On March 9, 2004, in Ukiah, California, plaintiff wrote checks to Food Mart and Walmart in the amount of $83.41 and $69.26, respectively. (Pl.'s Mot. for Class Certification 8.) The local merchants subsequently dishonored both checks, and the checks were forwarded to DATS for processing. (*Id.*) DATS mailed an initial letter for the dishonored Food Mart check on June 30, 2004. (*Id.*) The letter was typed on letterhead for the Mendocino District Attorney and advised plaintiff of the ongoing investigation regarding her alleged violation of Penal Code § 476(a). (Compl.Ex. 1.) The letter demanded total fees of $208.41,[2] and further stated that "[n]o response to this notice will be considered a rejection of this diversion opportunity and may result in further investigation with the possible issuance of a criminal complaint and ARREST warrant." (*Id.*) As plaintiff remained non-responsive, defendants continued to send periodic letters until plaintiff declared bankruptcy. (Pl.'s Mot. for Class Certification.) On June 23, 2005, after receiving a filing in the bankruptcy proceeding, DATS requested plaintiff's bank records using the letterhead of the Ukiah Chief of Police. (*Id.*)

Plaintiff moves to certify the following "umbrella" class: "All persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003, to the date the class is certified." (*Id.* at 9.) In addition, plaintiff proposes three subclasses. Subclass 1, or "the FDCPA class," is defined as "[a]ll members of the umbrella class from whom DATS attempted to collect, or collected[,] money for checks written for personal, family, or household purposes, since June 29, 2004." (*Id.*) Subclass 2, or the "Due Process and tort class," is defined as "[a]ll members of the umbrella class from whom DATS attempted to collect, or collected[,] money, since June 29, 2003." (*Id.*) Subclass 3, or the "Bank records class," is defined as "[a]ll members of the umbrella class whose bank records DATS attempted to obtain."[3] (*Id.*)

Defendants oppose class certification on the grounds that the action lacks commonality, typicality, and adequate representation. Defendants also contend there is no applicable Rule 23(b) class by which this action can be certified. Finally, defendants move to dismiss plaintiff's supplemental state law claims because they raise novel and complex state law issues.

## II. Discussion

### A. Supplemental Jurisdiction

Under 28. U.S.C. § 1367(c)(1), a district court has discretion to decline to exercise supplemental jurisdiction over a claim "that raises a novel or complex issue of state law." After determining whether state claims properly fall under § 1367(c)(1), the "Court must decide that declining jurisdiction best serves the values of economy, convenience, fairness, and comity'" established in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See Jeffery v. Home Depot U.S.A., Inc.*, 90 F.Supp.2d 1066, 1071 (S.D.Cal.2000).[4]

---

**2.** This amount represents $83.41 for the dishonored check, a $5.00 bank fee, a $35.00 "bad check fee," and a $85.00 "Diversion fee." (Compl.Ex. 1.)

**3.** Plaintiff's description of subclass 3 does not specify a common legal claim shared by its members.

**4.** In *Executive Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1548–49 (9th Cir. 1994), the Ninth Circuit admonished the parties that "this Court does not interpret the 1990 enactment of Section 1367 as restricting the discretionary factors set forth in *Gibbs*. Rather, this Court interprets Section 1367 as merely allowing this Court, at its discretion, to exercise jurisdic-

First, the "factual predicate" for declining jurisdiction under § 1367(c)(1) does not clearly exist because although Counts 4 and 5 may involve novel issues of California law, raising an issue of first impression regarding the interpretation of California Penal Code §§ 1001.60–1001.67,[5] it is not clear that these issues are complex. Courts have considered claims to be complex when they address issues of first impression that are numerous or of constitutional magnitude. *See, e.g., Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1037–38 (8th Cir.1999) (affirming a district court's decision to decline to exercise jurisdiction under § 1367(c)(1) when the claims involved at least six "complex substantive and remedial issues of first impression"); *Castellano v. Bd. of Trustees of Police Officers' Variable Supplements*, 937 F.2d 752, 758–59 (2d Cir.1991) (declining supplemental jurisdiction and concluding that "it would be, at the very least, imprudent for us to determine a state constitutional claim of first impression"). In contrast, the court here faces a single, unexceptional question of statutory interpretation: whether DATS had statutory authorization under California law to seek fees from putative plaintiffs beyond the actual amount of bank charges incurred.

Second, the values of economy, convenience, and fairness favor retention of supplemental jurisdiction over Counts 4 and 5 by this court. The state and federal claims share the operative facts regarding the substance of the communications between the defendant and the plaintiff, the nature of the contract between the defendant and Mendocino County, and the request for plaintiff's bank records by the defendant. Because economy and convenience are best served in the maintenance of a single suit, *see Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the common nucleus of operative facts between the state claims and the federal claims arising out of § 1983 and the FDCPA favors the retention of jurisdiction.

Defendant seeks dismissal of Counts 4 and 5 on the basis of comity. (Defs.' Opp'n to Pl.'s Mot. for Class Certification 12–17.) "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of the applicable law." *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. The decisions of state law this court must make are not needless, but rather are necessary to determine the merits of the federal claims. For example, plaintiff's FDCPA claim will be dependent upon this court's interpretation of relevant sections of the BDCA. *See Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354, 1368 (E.D.Cal.1995) (finding that for a defendant to show collection based charges were "permitted" by law, "it must identify some state statute which

tion over supplemental parties, which was previously foreclosed by *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)." The court went on to explain:

> By codifying preexisting applications of *Gibbs* in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories. Once that factual predicate is identified, the exercise of discretion, of course, still is informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness, and comity.'

24 F.3d at 1557 (citations omitted).
The Ninth Circuit later reiterated this view in *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir.1997) (en banc) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)—as it has always

had under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)."). The court in *Acri* explained that, "[w]hile discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.'" 114 F.3d at 1001 (citing *Allen v. City of L.A.*, 92 F.3d 842, 846 (9th Cir.1996), *Executive Software N. Am. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir.1994)).

5. Specifically, defendants contend the BCDA must be interpreted to determine whether it "contemplates an allowance for a contractor to charge a fee for a diversion class, and the allowable amount of that fee or any other administrative fees." (Defs.' Opp'n to Pl.'s Mot. for Class Certification 15). Although defendants provide five additional examples of statutory ambiguity with regard to the BCDA, those alleged ambiguous sections are not implicated by Counts 4 and 5.

'permits,' i.e., authorizes or allows, in however general a fashion, the fees or charges in question"). Therefore, comity arguably counsels in favor of the court retaining supplemental jurisdiction as well, and supplemental jurisdiction will be retained by this court.[6]

## B. *Class Certification*

A class action must meet the four prerequisites under Federal Rule of Civil Procedure 23(a), in addition to meeting the requirements of at least one of the three subdivisions of Federal Rule of Civil Procedure 23(b). *See* Fed.R.Civ.P. 23(a),(b). Each subclass must also satisfy these same requirements. *Betts v. Reliable Collection Agency,* 659 F.2d 1000, 1005 (9th Cir.1981). Additionally, although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, *see Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Montgomery v. Rumsfelo,* 572 F.2d 250, 255 (9th Cir.1978), the court must conduct a rigorous inquiry before certifying a class, *see Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *E. Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403–05, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Petitioners have the burden of demonstrating that they satisfy the class certification prerequisites. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (citing *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir.1985)).

### 1. *Rule 23(a)*

Rule 23(a) restricts class actions to cases where:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See* Fed.R.Civ.P. 23(a); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).

#### a. *Numerosity*

■ Rule 23(a)(1) requires a class "so numerous that joinder of all members is impracticable" before the action is certified. *E. Tex. Motor Freight,* 431 U.S. at 405, 97 S.Ct. 1891 (1977) ("careful attention to the requirements [for class certification] remains nonetheless indispensable"). Courts have established no absolute limitations for determining numerosity. *See Gen. Tel. Co. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). However, a class consisting of one thousand members "clearly satisfies the numerosity requirement." *Sullivan v. Chase Inv. Servs., Inc.,* 79 F.R.D. 246, 257 (N.D.Cal.1978).

Here, plaintiff has met the numerosity requirement for each subclass. As to Subclasses 1 and 2, plaintiff provides statistical reports from each county using defendants' services, and these reports reference thousands of potential plaintiffs. (Pl.'s Mot. for Class Certification Ex. 11.) As to Subclass 3, the statistical reports also reference thousands of instances of bank record collection by defendants. (*Id.*) Moreover, defendants do not object to class certification on numerosity grounds.

#### b. *Commonality*

■ Rule 23(a)(2) also requires "questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). The Ninth Circuit construes commonality liberally. *See Hanlon,*

---

**6.** Defendants also seek dismissal of Counts 4 and 5 based on plaintiff's failure to plead reliance, an element of those claims. (Defs.' Opp'n to Pl.'s Mot. for Class Certification at 10.); see also Fed. R. Civ. Proc. Rule 12(b)(6). Defendants conceded in oral argument that this argument was, essentially, a 12(b)(6) motion to dismiss for failure to state a claim raised for the first time in their opposition to the instant motion.

This argument does not implicate lack of subject matter jurisdiction. Defendants have not filed a motion to dismiss, and plaintiff's only opportunity to respond comes in the form of a reply to their class certification motion. Because defendants' attempt to make a 12(b)(6) motion to dismiss is untimely and not properly noticed, the court declines to address it.

150 F.3d at 1019. It is not necessary that all questions of law and fact be common. *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

Here, there are common questions of both law and fact. Because defendants have engaged in standardized practices of sending form letters to putative class members regarding dishonored checks, there is a common factual basis for all class members.[7] Additionally, plaintiff's legal claims arise from this common set of facts.[8] Plaintiff claims that defendants negligently and fraudulently misrepresented information in their communications regarding: (1) the fact that the communications were not from a law enforcement agency; (2) the character, amount, and legal status of the debt; and (3) the fact that defendants could not themselves prosecute putative plaintiffs for failure to respond. (Pl.'s Mot. for Class Certification 13–14.) Other legal questions common to the putative plaintiffs are: that defendants' collection practices violate plaintiffs' rights to substantive and procedural due process; that defendants failed to await a finding of probable cause that the putative class members had violated the BCDA before sending letters and attempting to collect upon the debt; and that defendants invaded plaintiffs' privacy by requesting bank records.

Moreover, undergirding the several claims alleged by plaintiff is a common defense being asserted by defendants. Defendants contend that the specific amount and type of authority they exercised were granted to them by California's BDCA. More specifically, defendants contend that under the BDCA, they had the authority to send demand letters, charge fees for debt collection, and request bank records.[9] Accordingly, plaintiff has met the commonality requirement.

### c. *Typicality*

■ Rule 23(a)(3) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," without the claims having to be "substantially identical." *Hanlon,* 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508 (quoting *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D.Cal.1985)).

In this case, all putative class members have the same or similar injury arising out of the same or similar fees charged, alleged due process violations, and, with respect to Subclass 3, the same or similar bank record inquiries. Defendants engaged in a common course of conduct that was not unique to plaintiff by sending collection demand letters to all class members, by presenting those demand letters under the "color of law," by demanding fees based on alleged statutory authorization, by allegedly making fraudulent and negligent misrepresentations in their communications with putative plaintiffs, and, as to Subclass 3, and by requesting bank records based on alleged statutory authorization. (*See* Pl.'s Mot. for Class Certification App. 3, Craighead Dep. at 40: 1–8, 20–25; 93:16–17.) Finally, it is through this same course of conduct that the alleged injuries

---

7. Defendant disputes commonality on the allegation that "different letters were sent in different counties and the oral communications between [defendant] and check writers are not uniform." This argument, however, is nothing more than an allegation of "divergent factual predicates," which does not defeat commonality. *See Hanlon,* 150 F.3d at 1019.

8. The proposed umbrella class is defined by the factual commonality of its members: all putative members are people who received collection demands regarding dishonored checks from DATS. The other classes are based on plaintiffs' other legal claims; namely, plaintiff's claims relating to the FDCPA, due process under § 1983 and the California Constitution, and negligent and fraudulent representation and invasion of privacy under California law.

9. There is agreement among the parties as to these common issues of law. (*See* Defs.' Opp'n to Pl.'s Mot. for Class Certification 15 n. 12; Pl.'s Mot. for Class Certification 13–14.)

arose. Plaintiff's claims are reasonably coextensive with those of the class, and thus meet the typicality requirement.[10]

#### d. *Adequacy of Representation*

■ Rule 23(a)(4) requires representative parties who "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4); *see Hanlon,* 150 F.3d at 1020. To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) will the named plaintiff and her counsel vigorously prosecute the action on behalf of the class? *Hanlon,* 150 F.3d at 1020.

Defendants contend that named plaintiff's current financial history makes her an unsuitable fiduciary who is financially unable to vigorously prosecute this action.[11] All class members must, by definition, have written a bad check. Thus, defendants' argument would force this court to find every putative member of the class an unsuitable fiduciary, and would prevent any case with financially vulnerable plaintiffs from being treated as a class action, a result this court cannot allow.

Defendants have pointed to no real conflicts of interest between named plaintiff, her counsel, and the unnamed class members. Additionally, the court finds no indication that the named plaintiff and her counsel will not vigorously prosecute this action. Significantly, two of the four attorneys representing plaintiff have appeared before this court in a previous FDCPA class action. *See Littledove v. JBC & Assoc., Inc.,* No. 00–0586, 2001 WL 42199 (E.D.Cal. Jan.11, 2001). Therefore, named plaintiff and her counsel will adequately represent the putative class.

#### 2. *Rule 23(b)*

An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action if it also meets the requirements of at least one of the three subdivisions of Rule 23(b). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Plaintiff seeks certification under Rule 23(b)(2). In the alternative, plaintiff seeks certification of a "hybrid class" with "injunctive, declaratory relief, and damages issues in the Section 1983 class being certified under Rule 23(b)(2), and monetary damage issues in the FDCPA class being certified pursuant to Rule 23(b)(3)." (Pl.'s Mot. for Class Certification 20.)

#### i. *Rule 23(b)(2) certification*

■ Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

**10.** Defendants contend that plaintiff lacks typicality because (1) defendants sent different types of letters to check writers in different counties and (2) due to internal processing errors, defendants' conduct was unique with respect to the plaintiff. (Defs.' Opp'n to Pl.'s Mot. for Class Certification 20–21.) As with commonality, however, precise symmetry is not required between all the letters sent by defendants to absent class members and those letters sent by defendants to the named plaintiff. Instead, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief sought." *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 545 (N.D.Cal. 2005) (quoting *Hanon,* 976 F.2d at 508). Additionally, the internal processing errors committed by defendants do not appear to have altered the shared course of conduct among the putative class members and the named plaintiff. Plaintiff contends that the letters were essentially the same, based on the deposition testimony of defendant Craighead and defendants' responses to

interrogatories. (Pl.'s Reply in Supp. of Mot. for Class Certification 9–10.) Finally, with respect to defendants' requests for bank records, plaintiff points out that although there may be differences in the timing of acquisition of bank records, the timing of acquisition is irrelevant to plaintiff's claims. (*Id.*)

**11.** The defendant cites to a District of Minnesota case to support its assertion. *See Sonmore v. CheckRite Recovery Servs.,* 206 F.R.D. 257, 263 (D.Minn.2001). However, that case does not mandate a showing of financial suitability as an element of adequate representation. *See id.* at 263 n. 4 (finding the same argument to be groundless and without merit as plaintiff's counsel had stipulated to advancing the costs of litigation). This court has found no authority that would require it to impose this additional element. Moreover, plaintiff has stated in her declaration that she has arranged for her attorneys to advance all litigation costs. (Schwarm Decl. ¶ 7.)

"Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive relief or declaratory relief, but may include cases that also seek monetary damages." *See, e.g., Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 n. 3 (9th Cir.1986) (noting that the plaintiff's request for money damages was "merely incidental to their primary claim for injunctive relief"); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 596 (E.D.Cal.1999) (certifying a class under Rule 23(b)(2) on "issues of liability, declaratory relief and statutory damages under the FDCPA"); *Littledove*, 2001 WL 42199 at *5 (certifying a class under Rule 23(b)(2) when "the claims for injunctive relief will affect more members and have consequences over a greater period of time than the claims for monetary damages"). However, injunctive and declaratory relief must *predominate* over monetary relief for certification to be appropriate under Rule 23(b)(2). *See Molski v. Gleich*, 318 F.3d 937, 949–50 (9th Cir.2003) (certifying a class under Rule 23(b)(2) when injunctive relief was the predominant form of relief sought by the class).

Plaintiff argues that monetary damages are incidental to the declaratory and injunctive relief sought and therefore do not predominate. There is no bright-line rule that incidental damages do not predominate; the proper inquiry requires examining the specific facts and circumstances of the case to determine what form of relief predominates. *See Molski*, 318 F.3d at 950.

Here, injunctive relief and corresponding declaratory relief is appropriate with respect to the class as a whole because defendants' actions are generally applicable to the entire class—each putative member was subject to defendants' collection efforts that were purportedly made pursuant to statutory authorization under the BCPA.[12] Although plaintiff additionally seeks actual damages and statutory damages pursuant to 15 U.S.C. § 1692(k), the request for injunctive and declaratory relief clearly predominates over the claim damages. (*Id.* ¶ 11.) Under the hybrid class proposed by plaintiff, the monetary relief sought by Rule 23(b)(2) is restricted to statutory damages. Statutory damages under the FDCPA are limited in class actions to one percent of the defendants' net worth and divided between all class members. 15 U.S.C. § 1692k.

Accordingly, class certification under Rule 23(b)(2) is proper.

### ii. *Rule 23(b)(3) certification*

■ A class action may also be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting individuals members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). There is clear justification for handling the dispute on a representative rather than individual basis, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022 (quoting Charles A. Wright et al., *Federal Practice & Procedure* § 1777 (2d ed.1986)).

Here, the common questions present a significant aspect of the case, and they can be resolved for all members in a single adjudication. The only significant individual questions will relate to the identification of the individual class member, whether the individual class member paid "collection fees," and whether the individual paid those fees in reliance on defendants' alleged misrepresentation. Thus, the common questions concerning whether the defendants' standardized conduct violates the FDCPA and whether the defendants' conduct amounts to actionable misrepresentations predominate the action. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("[P]redominance is a test readily met in certain cases alleging consumer . . . fraud . . . ."); *see also*, Fed. R.Civ.P. Rule 23(b)(3) advisory notes (1966)

---

12. *See* Fed.R.Civ.P. Rule 23(b)(2) advisory committee note (1996) ("Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.").

("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of damages suffered by the individuals in the class.").

■ A class action is also superior to the litigation of the putative members' individual claims. Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is "usually so small there is little incentive to sue individually." *Ballard,* 186 F.R.D. at 600 (concluding, in an analysis under 23(b)(3), that "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged' ") (quoting *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607, 610 (D.Ariz.1982) (citation omitted)); *see also Amchem Prods., Inc.,* 521 U.S. at 617, 117 S.Ct. 2231 (noting that Rule 23(b)(3) was designed to allow the vindication of "the rights of groups of people who individually would be without effect strength to bring their opponents into court") (quoting Benjamin Kaplan, A Prefatory Note, 10 B.C. Ind. & Com. L.Rev. 497 (1969)).

Accordingly, class certification under Rule 23(b)(3) for putative members having claims for actual damages is also proper.[13]

### 3. *Class Definition*

The court has discretion to create subclasses when appropriate. Fed.R.Civ.P. Rule 23(c)(4)(B).

**13.** Defendants contend that plaintiff has the additional burden of presenting a suitable and realistic plan for the trial of class claims. Defendants support this assertion with an incomplete quotation from a factually dissimilar case. (Defs.' Opp'n to Pl.'s Mot. 25) (quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir.2001)). That case, and every other case cited to by defendants is support of this argument, refers to multistate class action claims. *See, e.g., id.* at 1189 ("Because Zinser seeks certification of a nationwide class for which the law of forty-eight states potentially applies, she bears the burden of demonstrating 'a suitable and realistic trial plan for the trial of class claims.' ") (quotation omitted)); *Valentino v. Carter–Wallace,* 97 F.3d 1227 (9th Cir.1996) (nationwide products liability tort class action); *Castano v.*

Plaintiff requests the Court to certify two subclasses:

Subclass 1: [FDCPA class]: all members of the umbrella class, from whom [defendants] attempted to collect, or collected money for checks written for personal, family, or household purpose, since June 29, 2004.

Subclass 2: [Due process and tort class]: All members of the umbrella class from whom [defendants] attempted to collect, or collected money, since June 29, 2003.

(Pls.' Mot. for Class Certification 9.)

Additionally, plaintiff suggests a third subclass based on the acquisition of bank records by defendants. (*Id.*) Defendants do not object to the definitions of these subclasses. However, the court declines to grant certification as to proposed Subclass 3 because plaintiff has not alleged an underlying claim.[14] The court therefore finds the subclasses as denoted above are suitable to proceed in this class action.

### III. *Conclusion*

IT IS THEREFORE ORDERED that plaintiff's motion for class certification be, and the same hereby is, GRANTED. The court certifies the following umbrella class: All persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003, to the date the class is certified.

The court further certifies the following subclasses: (1) all members of the umbrella class, from whom DATS attempted to collect, or collected money for checks written for

*Am. Tobacco Co.,* 84 F.3d 734 (5th Cir.1996) (multistate tobacco class action); *Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D.N.J.1998) (class action requiring application of law from 52 jurisdictions). The court finds no relevant authority requiring the imposition of this additional burden on plaintiff for this class action.

**14.** The court assumes that this subclass was based on plaintiff's motion to amend, in which plaintiff sought to add a claim for invasion of privacy based on the acquisition of bank records. However, upon the court's admonition during oral argument that only one of plaintiff's motions would be considered at that time, plaintiff's counsel withdrew the motion to amend.

personal, family, or household purpose, since June 29, 2004; and (2) all members of the umbrella class from whom [defendants] attempted to collect, or collected money, since June 29, 2003.

Named plaintiff Kristy Schwarm shall represent the umbrella class and all subclasses, with Paul Arons, O. Randolph Bragg, Scott Shoblom, and Ronald Wilcox as class counsel. Class counsel shall, on or before a date of ninety (90) days from the date of this Order, cause to be mailed in the name of the clerk by first class mail, postage prepaid, to all class members who can be identified through reasonable efforts, a notice meeting the requirements of Federal Rule of Civil Procedure 23(c)(2).

Class members may opt out by filing, within two (2) months of the receipt of notice, written indication of their request for exclusion in a post office box designated by class counsel, from which class counsel shall receive and tabulate requests for exclusion. *See Hawk Indus., Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619, 625 (S.D.N.Y.1973). Class counsel shall file with the clerk, within fourteen (14) days of the termination of the period that class members are given to opt out, an affidavit identifying the persons to whom notice has been mailed and who have not timely requested exclusion.

This case is set for further status conference on August 14, 2006 at 9:00 a.m. Counsel shall file a written status report no later than seven calendar days before the date of the conference.