**HINFIN REALTY CORP., Harbor Fuel Company, Inc., and Glenwood Terminal Corp., Plaintiffs,**

v.

**The PITTSTON COMPANY, Defendant.**

**No. 00 CV 4285(ADS)(MLO).**

United States District Court,
E.D. New York.

April 12, 2002.

Farrell Fritz, P.C., John M. Armentano, Joseph E. Campolo, of Counsel, Uniondale, NY, Attorneys for the Plaintiffs.

Kathryn Gull, Locust Valley, NY, Attorney for the Defendant.

Patton Boggs, LLP, David J. Farber, Harold Kim, of Counsel, Washington, DC, Attorneys for the Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case presents the interesting and rarely encountered issue of when a party may discontinue an action without prejudice in the face of opposition.

Hinfin Realty Corp. ("Hinfin" or a "plaintiff"), Harbor Fuel Company, Inc. ("Harbor Fuel" or a "plaintiff"), and Glenwood Terminal Corp. ("Glenwood" or a "plaintiff") (collectively, the "plaintiffs") brought this diversity action against The Pittston Company ("Pittston" or the "defendant"), seeking to recover damages they suffered as a result of an oil spill that occurred on their property during a time when the facilities for the receipt and distribution of "No. 6 fuel oil" were allegedly owned, maintained, and repaired by Pittston. Presently before the Court is a motion by the plaintiffs, brought on by order to show cause, for the voluntary dismissal of their action without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

## I. BACKGROUND

### A. The Procedural History of the Case

The plaintiffs filed the complaint in this action on July 24, 2000. They served the defendant with a copy of the summons and complaint on August 8, 2000. Pittston filed its answer on October 11, 2000. On February 1, 2001, the plaintiffs served an amended complaint. On February 5, 2001, United States Magistrate Judge Michael L. Orenstein held an initial discovery scheduling conference.

On March 12, 2001, Pittston filed its answer to the amended complaint. Pittston included thirteen affirmative defenses in its answer. The eighth affirmative defense was labeled as a defense and counterclaim and reads as follows:

*EIGHTH DEFENSE TO AMENDED COMPLAINT AND COUNTERCLAIM*

40. Pittston hereby incorporates by reference paragraphs 1 through 39 above as if fully set forth herein.

41. Any injuries, damages or loss sustained by Plaintiffs, who both owned and operated the facility, was the result, in whole or in part, of the negligence of other culpable conduct of the Plaintiffs' [sic] or someone over whom Pittston had no control and without any negligence or fault or want of care on the part of Pittston.

42. Plaintiffs are strictly liable, without regard to fault, under Section 181 of the New York Navigation Law, for all clean up and removal costs, and all direct and indirect damage, attributable to any environmental damage at the Premises, as defined in the complaint.

43. As a result, Plaintiffs are required to indemnify Pittston, or on the basis of

apportionment of responsibility for the alleged occurrence, the amount of damages otherwise recoverable by Plaintiffs shall be diminished in the proportion by which the culpable conduct attributable to the Plaintiffs bears to the culpable conduct which caused the injuries, damage or loss.

On March 29, 2001, the plaintiffs filed their reply to the defendant's counterclaims and denied the allegations set forth in paragraphs 41, 42, and 43 of the Answer.

In motion papers dated May 24, 2001, Pittston requested that the Court abstain from exercising federal jurisdiction over the action on the ground that a parallel proceeding was pending in state court, to which the plaintiffs and the corporate successor to a Pittston subdivision were parties, and in which the plaintiffs could raise the issues they were presenting to this Court. In papers dated June 20, 2001, the plaintiffs opposed the motion for abstention.

On January 11, 2002, before the Court had the opportunity to decide Pittston's request to abstain, the plaintiffs submitted a letter asking for permission to withdraw their opposition to Pittston's motion. The plaintiffs stated that "[s]ince our submission of [papers in] opposition to the defendants' motion, we have engaged defendant in numerous discussions wherein defendant has asserted to us that we have simply sued the wrong party.... In an effort to find a solution acceptable to all and to conserve our client's limited assets, we have revisited our opposition to the motion pending before you and we consent to the stay of this action as requested by movants."

In a letter dated January 14, 2002, Pittston informed the Court that it wished to withdraw its motion for abstention. The defendant explained that it had filed the motion for abstention in an attempt to avoid a needless litigation, which purpose had been mooted by the passage of time. In an order dated February 15, 2002, the Court granted Pittston's request to withdraw their motion for abstention and directed the parties to appear on February 21, 2002 at 9:00 a.m. for a status conference.

The parties appeared on that date for a status conference, at which the Court signed an order directing the defendants to show cause before the Court today, April 12, 2002 at 2:00 p.m. why an order should not be issued granting the plaintiffs' motion to voluntarily dismiss the complaint without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). In addition, the Court granted the plaintiffs' request to stay discovery pending the determination of their motion. The defendants filed their opposition papers on February 21, 2002, and the plaintiffs filed their reply papers on March 5, 2002.

**B. The Affidavit of Donald C. Death, Jr., In Support of the Plaintiffs' Motion to Dismiss the Action Voluntarily Pursuant to Fed.R.Civ.P. 41(a)(2)**

The following factual allegations and arguments are taken from the affidavit of Donald C. Death, Jr., the president of Hinfin, Harbor Fuel, and Glenwood, which was submitted in support of the plaintiffs' motion to dismiss the action without prejudice. Prior to commencing this action, the plaintiffs' environmental consultant was working with the New York State Department of Environmental Conservation (the "DEC") to find a cost-effective method of removing the petroleum from their land. Originally, the plaintiffs were told that the cost of remediation was very high. However, their consultant and the DEC representative are currently trying to find a more inexpensive alternative. As of the date of this decision, the plaintiffs do not have a remediation plan that has been approved by the DEC, and the estimated cost of remediation is still anywhere between $300,000 and $1,500,000.

Due to this uncertainty, the plaintiffs' board members are unsure if the continuation of this action is economically warranted. The plaintiffs state that they will be unable to decide whether to continue the action until the DEC approves the remediation plan, which approval may not be obtained until this summer. Accordingly, the plaintiffs seek to devote their limited resources to remediation, as opposed to litigation, while also preserving the option of recovering their remediation costs at a later date, if it is economically feasible and warranted.

During oral argument, the plaintiffs informed the Court that the parallel state court action has been discontinued without prejudice pursuant to an agreement between the parties. The plaintiffs further state that they are trying to sell the land at issue, but the sale has been delayed due to the fact that the DEC has not yet approved of a remediation plan.

The plaintiffs assert that the action is in the early stages of discovery and far from being ready for trial. According to the plaintiffs, Pittston first began making discovery demands in December 2001. The plaintiffs claim that they have responded to extensive interrogatories and a notice to admit 188 facts in a timely fashion. They explain that they have produced over 650 pages of documents, some of which contain information from the 1960's. In addition, the plaintiffs state that they have provided the defendants with the names and addresses of potential witnesses. The plaintiffs assert that responding to the defendant's discovery requests has required a huge amount of time and has created a large financial burden that is diverting money from their remediation efforts. Due to their limited financial resources, the plaintiffs have not requested any discovery from the defendant.

The plaintiffs also inform the Court that the case has been somewhat delayed due to the recent illness and demise of Donald Death, Sr., who was the only representative of the plaintiffs with direct knowledge of the facts from the 1960's. The plaintiffs state that they require additional time to locate other fact witnesses who might provide the information that Donald Death, Sr., would have supplied. In addition, in order to proceed, Donald Death, Jr., must familiarize himself with 40 years of documents so that the plaintiffs can submit a meaningful response to the defendant's discovery request.

Thus, the plaintiffs request that the Court grant their motion to voluntarily dismiss the action without prejudice so that they may (1) establish the actual cost of remediation; (2) use their money for remediation; (3) sell the property, if possible; (4) investigate new fact witnesses; and (5) then decide whether to renew this complex litigation.

## C. The Declaration of Harold H. Kim, Esq., In Support of the Defendant's Opposition to the Plaintiffs' Motion for a Voluntary Dismissal

The following factual allegations and arguments are taken from the declaration of Harold H. Kim, Esq., in opposition to the plaintiffs' motion to dismiss the action without prejudice. Pittston argues that the Court should deny the plaintiff's motion, because the plaintiffs have wasted judicial resources as well as the defendant's time and money by filing a lawsuit that they have neither investigated nor prosecuted. According to Pittston, the plaintiffs (1) failed to file Rule 26(a) disclosures until months after they were due; (2) failed to respond to interrogatories and requests to admit; and (3) failed to make available properly noticed fact and corporate 30(b)(6) witnesses. Pittston also argues that the plaintiffs' indifference to the lawsuit has led to the unavailability of Donald Death, Sr., whom Pittston had urged be deposed before he became incapacitated. The defendant further asserts that the plaintiffs delayed disclosing the identity of one Hugh Whitten until after the discovery cutoff date, and Mr. Whitten may have discoverable information regarding the oil spill.

Pittston contends that it is clear from the plaintiffs' failure to properly investigate and prosecute this case that the present motion for a voluntary dismissal is simply an attempt to avoid complying with Pittston's discovery demands. Pittston also argues that an order granting the request for a voluntary dismissal will only enable the plaintiffs to circumvent the discovery deadline and to overcome their past failure to prosecute this case.

During oral argument Pittston advised the Court that as of the end of February 2002, it had **expended** more than $135,000 in fees and expenses. In their opposition papers, Pittston explained that the fees and expenses were incurred in the following manner: (1) evaluating the legal basis of the plaintiffs' original and amended complaints; (2) reviewing and analyzing the plaintiffs' document production; (3) propounding discovery requests and deposition notices on the plain-

tiffs; (4) conducting third party discovery; (5) addressing the plaintiffs' discovery deficiencies; (6) briefing a motion to stay, which the plaintiffs should not have opposed; and (7) reviewing, culling, and producing its own documents to the plaintiffs in the absence of any specific request by the plaintiffs. Pittston also states that it has devoted "considerable time and money" to finding and retaining an environmental remediation expert who is prepared to inspect the site and determine the extent of the contamination. Due to the amount of money Pittston has spent defending a case that it alleges the plaintiffs failed to prosecute, Pittston requests that in the event that the Court grants the plaintiffs' motion, the Court award attorney's fees and costs to Pittston.

## II. *DISCUSSION*

Where, as here, a defendant has answered a complaint, a plaintiff may no longer dismiss an action as a matter of right. *See D'Alto v. Dahon California, Inc.,* 100 F.3d 281, 283 (2d Cir.1996). Under such circumstances, the provisions of Rule 41(a)(2) apply. Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal:

> [A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed.R.Civ.P. 41(a)(2).

■ Pittston raised what it labels a counterclaim before the plaintiffs filed their motion for a voluntary dismissal. Thus, the first question before the Court is whether the "counterclaim can remain pending for independent adjudication by the court." Fed. R.Civ.P. 41(a)(2). If the answer is yes, then the Court may proceed to determine whether the plaintiff should be permitted to dismiss the action. On the other hand, if the coun-

terclaim cannot exist alone, the Court is precluded from allowing the action to be dismissed.

The Court finds that although Pittston has labeled its eighth affirmative defense as both a "counterclaim" and an affirmative defense, the substance of the allegation reveals that it is not a counterclaim but, rather, "purely a defensive pleading interposed against allowance of the claim." *Kleid v. Ruthbell Coal Co.,* 131 F.2d 372, 372 (2d Cir.1942) (holding that where an affirmative defense was labeled as a counterclaim, the district court properly granted the plaintiff's application to dismiss the action pursuant to Fed.R.Civ.P. 41(a)(2)); *see also* Fed.R.Civ.P.; 8(c) ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."). Paragraph 41 alleges that any injuries suffered by the plaintiffs were a result of the plaintiffs' own negligence, and paragraph 42 alleges that under New York law, the plaintiffs are strictly liable for the clean up costs of their own property. Paragraph 43 concludes that the plaintiffs therefore must indemnify Pittston or liability must be apportioned.

Clearly, Pittston does not claim to have an injury for which it seeks affirmative relief. Further, Pittston's allegations cannot possibly be adjudicated separately from the plaintiffs' claims to which they apply. *See Reiter v. Cooper,* 507 U.S. 258, 265, 113 S.Ct. 1213, 1218, 122 L.Ed.2d 604 (1993); *Kleid,* 131 F.2d at 372; *MidAmerican Communications Corp. v. U.S. West Communications, Inc.,* 857 F.Supp. 772, 774 (D.Colo.1994). Indeed, the allegations contained in paragraphs 41–43 are purely defensive and not offensive. If Pittston were to succeed in demonstrating the plaintiffs' negligence or in proving that New York law holds the plaintiffs strictly liable for clean up costs, Pittston would avoid some or all liability. However, Pittston itself would not be entitled to recover damages independent of the plaintiffs' claim. *See Kleid,* 131 F.2d at 372 (one factor supporting the finding that a pleading was an affirmative defense rather than a counterclaim was the fact that the pleader could obtain no judg-

ment pursuant to the claim). Accordingly, although labeled as a counterclaim, the Court concludes that Pittston's "Eighth Defense to the Amended Complaint and Counterclaim" is solely an affirmative defense, *see Reiter*, 507 U.S. at 265, 113 S.Ct. at 1218; *Kleid*, 131 F.2d at 372; *MidAmerican Communications*, 857 F.Supp. at 774, and shall be redesignated as such, *see* Fed.R.Civ.P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.").

■ Given that the "Eighth Defense" is just that, a defense, and not a counterclaim, the Court can go on to determine whether the plaintiffs are entitled to an order granting the voluntary dismissal of their action pursuant to Fed.R.Civ.P. 41(a)(2). The decision whether to grant a motion for voluntary dismissal rests with the sound discretion of the trial court. *See Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir.2001); *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996); *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir.1990). Generally, a voluntary dismissal will be allowed "if the defendant will not be prejudiced thereby." *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir.1985). Significantly, the prospect of "starting a litigation all over again does not constitute legal prejudice." *D'Alto*, 100 F.3d at 283 (citing *Jones v. Securities & Exchange Commission*, 298 U.S. 1, 19, 56 S.Ct. 654, 659, 80 L.Ed. 1015 (1936)).

■ The Second Circuit has delineated a number of factors that courts should consider when determining whether a defendant will be prejudiced by a voluntary dismissal. *See Zagano*, 900 F.2d at 14; *see also, Catanzano*, 277 F.3d at 100; *D'Alto*, 100 F.3d at 283. These factors include: (1) the plaintiff's diligence in bringing the motion; (2) any "undue vexatiousness" on the plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of the plaintiff's explanation for a need to dismiss. *See Zagano*, 900 F.2d at 14; *see*

*also Catanzano*, 277 F.3d at 100; *D'Alto*, 100 F.3d at 283.

■ The Court finds that the plaintiffs were diligent in bringing their motion to dismiss the action without prejudice because they filed it immediately after the events that led to their decision not to pursue the action at this time. The complaint was initially filed on July 24, 2000, but no proceedings occurred during the remainder of that year. The plaintiffs filed their amended complaint on February 1, 2001, and Judge Orenstein held an initial conference four days later. The plaintiffs litigated the action throughout 2001, responding to Pittston's motion to stay the proceeding and to Pittston's discovery demands.

In early January 2002, the plaintiffs determined that they no longer wished to proceed with the action. First, they had begun responding to Pittston's discovery demands and realized that they wished to conserve their limited finances rather than pursue this action. In addition, Donald Death, Sr., had fallen ill, his prognosis was not good, and he was the individual who knew the most about the history of the premises, which goes back many years. In this kind of environmental case, the so-called "ancient" history is extremely important in determining the source of pollution. Therefore, in a letter dated January 11, 2002, the plaintiffs informed the Court that they wished to withdraw their opposition to the defendant's motion to stay the proceedings because the defendant had presented them with documentary evidence showing that Pittston was the incorrect defendant. The plaintiffs also advised the Court that they had asked Pittston to stipulate to a dismissal without prejudice so that the plaintiffs could investigate whether Pittston was the proper defendant, but Pittston declined to consent to the dismissal.

Had the plaintiffs prosecuted this case more vigorously, they might have reached this conclusion earlier in the action. Nevertheless, the Court finds that as soon as the plaintiffs made the decision to dismiss the action without prejudice, they informed Pittston. In addition, immediately after Pittston declined to consent to the withdrawal, the plaintiffs' withdrew their opposition to Pitt-

ston's motion to stay the action. When that tactic failed to halt the proceedings, the plaintiffs promptly filed the present motion. Accordingly, the Court finds that the plaintiffs were diligent in moving to dismiss the action without prejudice, and thus, the first *Zagano* factor weighs in their favor.

In addition, the Court finds no evidence of vexatiousness on the part of the plaintiff. Although the plaintiff could have pursued the action with more vigor, there is no evidence to suggest that the case was brought to harass the defendant. To the contrary, the plaintiffs have made few, if any, requests of the defendant after filing this lawsuit. Therefore, the Court finds that this factor also weighs in favor of granting the plaintiffs' motion.

The Court finds that the third *Zagano* factor, the extent to which the suit has progressed, is neutral. The fact that the case is approximately 21–months old weighs against granting the motion to dismiss without prejudice. However, when the plaintiffs first asked Pittston to agree to a dismissal without prejudice in January 2002, virtually no discovery had been conducted. Indeed, in an order dated November 2, 2001, Judge Orenstein stated, "Little or no discovery done." In the two months following that order, Pittston served extensive interrogatories, a notice to admit 188 facts, and a request for documents. On the other hand, the plaintiffs have not made any discovery requests. Importantly, as of the date of this order, no depositions have been conducted. Further, the Court notes that the defendant chose not to move to dismiss the case, and neither party has moved for summary judgment. In addition, a trial date has not been set. Thus, in light of the fact that the case is now 21–months old, but little action has been taken, the Court finds the third *Zagano* factor to be neutral.

In their memorandum in opposition, Pittston claims that absent the plaintiffs' conduct, the case would be ready for summary disposition. The Court finds this argument unpersuasive in light of the fact that Pittston seeks to file a third-party action, which would require additional trial preparation. Accordingly, the defendants' argument does not al-

ter the Court's conclusion that the third *Zagano* factor is neutral.

Pittston contends that if it is forced to relitigate this case, it faces the prospect of duplicative expenses. The defendant states that it has spent significant sums propounding and compelling discovery in this case and avers that if the plaintiffs re-file the lawsuit, Pittston will be required to "re-answer the complaint, re-exchange Rule 26(a) disclosures, re-retain its environmental experts, attend status hearings, and re-issue discovery." If the plaintiffs choose to file another lawsuit against Pittston, the grounds likely will be the same, and much of the work already done by Pittston will be easy to duplicate. Certainly, Pittston can use some of the material discovered and the legal work already done, if the case is renewed in the future. Further, this is not a case in which substantial discovery has been conducted, and the Court does not perceive a large amount of duplicative expenditures. As such, the fourth *Zagano* factor does not weigh against dismissal without prejudice.

The Court finds that the explanations for the plaintiffs' application are sufficient to support the motion. *See Zagano*, 900 F.2d at 14 (the adequacy of the plaintiffs' explanation for a need to dismiss is the fourth factor to be considered by courts when deciding a motion brought pursuant to Fed.R.Civ.P. 41(a)(2)); *see also Catanzano*, 277 F.3d at 100; *D'Alto*, 100 F.3d at 283. Donald Death, Jr., the president of the plaintiff corporations, needs time to settle his late father's affairs. He also requires time to review the companies' documents, some of which are over 40 years old. In addition, the plaintiffs' environmental consultant must devise a remediation plan to be approved by the DEC. Donald Death, Jr., wishes to gather all of this relevant information before deciding whether to recoup the cost of remediation through litigation. While he investigates this matter, he does not want to spend additional money to continue an action that he might find to be unnecessary. In doing so, he is sparing the defendants from expending additional monies in the defense of this lawsuit. The plaintiffs have limited assets and, apparently, wish to spend the money they have

remediating their land, rather than litigating this matter.

Economic concerns, such as those raised by the plaintiff, almost always dictate the course of litigation, and this case is no exception. The Court is not persuaded by Pittston's argument that the plaintiffs' motion is an attempt to avoid the discovery cutoff date. Accordingly, the Court finds that the plaintiffs' explanation for their request weighs heavily in favor of dismissing this action without prejudice.

Thus, an application of the *Zagano* factors leads the Court to conclude that the plaintiffs' motion to dismiss the action without prejudice should be granted. However, Pittston argues that it will suffer prejudice if the plaintiffs are permitted to refile this case at a later date because the witnesses will die, such as Donald Death, Sr., for example, memories will continue to fade, and the land may be sold. The defendant is not the only party who may suffer the consequences of the passage of time. The memories of witnesses for both sides may fade and the witnesses for both sides might become unavailable. Indeed, the unavailability of Donald Death, Sr., who was an important witness for the plaintiffs, is a main reason that the plaintiffs seek to discontinue this action. As both parties could suffer due to the passage of time, the Court finds that the defendant's argument against dismissing the action is not determinative. Indeed, the prospect of "starting a litigation all over again does not constitute legal prejudice." *D'Alto*, 100 F.3d at 283 (citing *Jones v. Securities & Exchange Commission*, 298 U.S. 1, 19, 56 S.Ct. 654, 659, 80 L.Ed. 1015 (1936)). As such, the Court grants the plaintiffs' motion to dismiss the action without prejudice.

However, this does not end the inquiry. Pittston asks the Court to condition the dismissal upon an award of its costs, including attorney's fees, in the amount of $135,000. Where a plaintiff successfully dismisses a suit without prejudice under Rule 41(a)(2), courts often grant the defendant an award of costs or fees. *See Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir.1985) ("Fee awards are often made when a plaintiff dismisses a suit without prejudice."); *Universal Marine Medical Supply, Inc. v. Lovecchio*, 1999 WL 441680 *5 (E.D.N.Y. May 7, 1999); *Mondejar v. Dow Chemical Co.*, 1998 WL 812577 *4 (E.D.N.Y. Apr.29, 1998); *Mercer Tool Corp.*, 175 F.R.D. at 176. "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito*, 764 F.2d at 133. By contrast, courts rarely award fees and costs when an action is dismissed voluntarily with prejudice. *See id.* at 133–34.

Applying these guidelines, the Court must seriously consider the application to award reasonable attorney's fees and costs to the defendant. Of course, if the plaintiffs were to agree to dismiss the action with prejudice, the Court would deny the defendant's motion for attorney's fees and costs because the risk of duplicative expenses will be moot. However, even if the Court were to grant this application, Pittston has not submitted billing time sheets or affidavits in support of its claim that it has incurred over $135,000 in attorney's fees and costs defending this suit since July 24, 2000. In addition, the plaintiffs have not had an opportunity to respond to a detailed accounting of Pittston's claim. Accordingly, the Court denies the defendant's motion for attorney's fees and costs, without prejudice and with leave to renew with the proper documentation and in accordance with the Court's Individual Rules.

By making this decision, the Court is not indicating that it has, as yet, decided to grant this application for attorney's fees and costs. Indeed, if the plaintiffs submit a notice to the Court, within ten days of the date of this decision, indicating that they are dismissing the action with prejudice, the Court will deny an application for attorney's fees and costs, because Pittston will no longer bear the risk of duplicative litigation and expense. However, if the plaintiffs decide not to submit a notice indicating that they are dismissing the action with prejudice, the defendant is permitted to file an application for attorney's fees and costs and is instructed to submit the appropriate documentation in support of its application. The Court notes that with rea-

sonable certainty, it will reduce the defendant's fee application by the amount of work the defendant will be able to use in a subsequent litigation.

### III. *CONCLUSION*

Having given the parties an opportunity to be heard and based on the foregoing, it is hereby

**ORDERED,** that the plaintiffs' motion for a voluntary dismissal of this case without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2), is **GRANTED,** and the case is dismissed; and it is further

**ORDERED,** that the defendant's motion for an award of attorney's fees and costs is **DENIED** without prejudice and with leave to renew with the proper documentation and in accordance with the Court's Individual Rules; and it is further

**ORDERED,** that this Court will retain jurisdiction over this case for the limited purpose of (1) permitting the defendant to file a motion for costs and attorney's fees in compliance with the terms of this memorandum of decision and order; or (2) accepting a consent by the plaintiff for a dismissal with prejudice which must be filed within 10 day of the date of this order.

**SO ORDERED.**