**Betty BULLER, d/b/a Buller Trucking Co., individually and on behalf of others similarly situated, Plaintiff/Counter Defendant,**

v.

**OWNER OPERATOR INDEPENDENT DRIVER RISK RETENTION GROUP, INC., Defendant/Counterclaimant.**

**No. 05–CV–00164–MJR.**

United States District Court, S.D. Illinois.

July 27, 2006.

Christopher T. Kolker, Charles Kolker Law Office, Belleville, IL, Elizabeth V. Heller, Goldenberg, Miller et al., Edwardsville, IL, for Plaintiff/Counter Defendant.

David A. Cohen, Paul D. Cullen, Sr., Randall Herrick–Stare, Cullen Law Firm, Washington, DC, Michael A. Lawder, Anderson & Gilbert, St. Louis, MO, for Defendant/Counterclaimant.

## MEMORANDUM and ORDER

REAGAN, District Judge.

This matter comes before the Court on the Motion to Dismiss Case and Counterclaims brought by Plaintiff/Counter Defendant Betty Buller, d/b/a Buller Trucking Co., individually and on behalf of others similarly situated (Doc. 38). For the following reasons, the motion is **GRANTED** and this case is **DISMISSED** without **prejudice**.

## INTRODUCTION

Buller owns and operates an independent trucking business, Buller Trucking Company ("BTC"). This case arises from an incident on July 29, 2003, in which the refrigeration system in a BTC truck failed, causing a $35,000 loss to the truck's perishable cargo. BTC's claim on its cargo loss insurance with Defendant Owner Operator Independent Driver Risk Retention Group, Inc., ("Risk Retention Group") was denied on the grounds that the loss was due to BTC's failure to maintain an adequate supply of refrigerant in the truck's cooling system, so that the loss was excluded from coverage under the terms of a Refrigeration Breakdown Endorsement ("RBE") in BTC's policy. On February 18, 2005, Buller filed this action against Risk Retention Group in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois.

Buller's complaint in this case alleges breach of contract, vexatious delay in paying insurance claims, and consumer fraud. Specifically, Buller alleges that the insur-

ance coverage sold by Risk Retention Group is illusory and illegally shifts the burden of proof for exclusions from coverage to policyholders; she also challenges the claims adjustment practices of Risk Retention Group and affiliated entities. Buller's complaint seeks certification of three nationwide classes. "Plaintiff Class (a)" is defined as "All persons (or their assignors) who, during the period from January 7, 1994 to the date of final judgment, purchased a policy of insurance with Defendant that included the RBE." Doc. 2 ¶ 37(a). The second proposed class is defined as "All persons (or their assignors) who, are 1) members of 'Plaintiff Class (a)'; 2) suffered damages and submitted a claim for damages under the RBE clause of the policy; and 3) had that claim denied, or reduced due to liability issues." *Id.* ¶ 37(b). Finally, the complaint requests certification of a defendant class of Risk Retention Group entities that "(a) sell insurance policies with the RBE ... and (b) adjust or deny claims." *Id.*

On March 7, 2005, Risk Retention Group removed this case to this Court, asserting federal subject matter jurisdiction under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA"). On the same day, Risk Retention Group removed a companion case docketed in the St. Clair County circuit court as case number 04–L–12, which was docketed in this Court as case number 05–165; although originally assigned to United States District Judge David R. Herndon, case number 05–165 later was transferred to the docket of the undersigned District Judge. After removal, Risk Retention Group brought a counterclaim against Buller. *See* Doc. 5. On September 29, 2005, the Court remanded both this case and case number 05–165 to state court for lack of subject matter jurisdiction. On petition for leave to appeal

from the Court's Order of remand pursuant to 28 U.S.C. § 1453, the United States Court of Appeals for the Seventh Circuit vacated the Court's Order. After issuance of the Seventh Circuit's mandate, the Court directed the parties to submit briefs on the issue of federal subject matter jurisdiction. On November 21, 2005, Buller moved for voluntary dismissal of this case. The Court, having considered Buller's motion and Risk Retention Group's response thereto, now is prepared to rule.

## DISCUSSION

### A. Subject Matter Jurisdiction

Before the Court can address Buller's request for voluntary dismissal, the Court must resolve the issue of its subject matter jurisdiction. On Risk Retention Group's appeal from the Court's Order remanding this case to state court for lack of subject matter jurisdiction, the Seventh Circuit held that this case, which as noted was filed on February 18, 2005, the effective date of the CAFA, *see* Pub.L. 109–2, § 9, 119 Stat. 4, is subject to removal pursuant to the CAFA if the statute's jurisdictional prerequisites are met. *See* Doc. 33. The CAFA grants federal courts jurisdiction in diversity, with exceptions not at issue here, *see* 28 U.S.C. § 1332(d)(3), (d)(4), (d)(5)(A), over class actions with one hundred or more class members, *see* 28 U.S.C. § 1332(d)(5)(B), in which any member of the plaintiff class is a citizen of a state different from that of any defendant, or any member of a plaintiff class or any defendant is a foreign state or a citizen or subject of a foreign state. *See* 28 U.S.C. § 1332(d)(2). In a class action in which the CAFA's requirement of minimal diversity is met, a federal court has jurisdiction if, after aggregating class members' claims, more than $5 million, exclusive of interest and costs, is in controversy. *See*

28 U.S.C. § 1332(d)(2), (d)(6). In this case it is not disputed that minimal diversity of citizenship exists and, thus, the question for the Court to resolve is whether the jurisdictional amount in this case exceeds $5 million.

■ Recent Seventh Circuit decisions have clarified the standard to be used in evaluating the amount in controversy in cases removed from state court to federal court in diversity. In *Meridian Security Insurance Co. v. Sadowski*, 441 F.3d 536 (7th Cir.2006), the court explained that

> a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal .... Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Id.* at 543. A removing party "need not show that the plaintiff will prevail or collect more than [the jurisdictional amount] if he does." *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir.2006) (emphasis omitted). Rather, the burden is to show "what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Id.*

In *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir.2005), the court found that an amount in excess of $5 million was in controversy in a proposed class action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), that had been removed from state court to federal court pursuant to the CAFA. The court noted that the TCPA, which prohibits businesses from sending unsolicited advertising faxes to prospective customers, imposes a minimum penalty of $500 for each violation of the statute, and that the penalty can be trebled for willful and knowing violations. *See* 427 F.3d at 447 (quoting 47 U.S.C. § 227(b)(3)). The court noted further that the defendant "concede[d] that it sent at least 3,800 advertising faxes," so that the potential damages in the case "could reach $5.7 million." *Id.* The court concluded that the jurisdictional minimum for CAFA purposes was satisfied:

> Countrywide did all that is necessary [to establish jurisdiction] by admitting that one of its employees sent at least 3,800 fax ads. From this and the statutory text one can determine that the controversy exceeds $5 million. The complaint did not set a cap on recovery—as it might have done if the plaintiff had represented that the class would neither seek nor accept more than $5 million in aggregate. Nor did the complaint abjure trebled damages; it held open that possibility, depending on the state of the proof. (The complaint reads: "If the evidence shows that the violation was willful, plaintiff requests trebling of the damages.") Countrywide did not have to confess liability in order to show that the controversy exceeds the threshold. A judge may well award less than $1,500 per fax, but a recovery exceeding $5 million for the class as a whole is not "legally impossible."

*Id.* at 449. *See also Meridian Sec. Ins. Co.*, 441 F.3d at 537, 543 (holding that the jurisdictional amount for diversity purposes was satisfied in an insurer's suit for a judicial declaration that it owed no duty

to defend or indemnify an insured in a state-court class action brought under the TCPA, where the state-court complaint sought certification of a class of "more than 50" persons, so that an award of statutory treble damages would yield $76,500, and the insurer's jurisdictional allegations were uncontested).

In this case, the gravamen of Buller's allegations is that the coverage for cargo loss caused by refrigeration breakdown sold by Risk Retention Group is essentially valueless. Buller alleges that her policy provides coverage for

> loss of or damage to refrigerated and or temperature controlled cargo but only when such loss and or damage is conclusively proven to have been caused by mechanical failure or breakdown of [the] automatic temperature control unit.
>
> With respect to coverage provided herein for mechanical failure or breakdown of the automatic temperature control unit it is expressly agreed and understood the coverage provided does not insure against failure or breakdown directly due to the following:
> a. Failure to provide adequate fuel supply.
> b. Failure to maintain crankcase oil level within manufacturer's specified limits.
> c. Failure to maintain an adequate level of refrigerant per the manufacturer's specifications.

Doc. 2 ¶ 13 (emphasis omitted). Buller alleges that the policy is drafted so as to leave Risk Retention Group at basically no risk. ". . . [R]efrigerant, oil and fuel do not leak, or get to inadequate levels, unless there are mechanical problems. Those refrigerants, oils and fuels do not leak naturally; it takes a defect for them to leak. Therefore, the policies are illusory." *Id.* ¶ 14. Also, Buller alleges, the language of the policies illegally shifts the burden of proof to policyholders to prove that a loss comes within the scope of coverage, rather than requiring Risk Retention Group, as the insurer and drafter of the policy, to prove that it does not. "The burden of proof in the policies which tries to force the insured to conclusively prove not being in the scope of an exclusion . . . is against public policy and against state regulations and statutes in all applicable states." *Id.* ¶ 16.

Finally, Buller alleges that Risk Retention Group employs deliberate strategies of refusing to pay legitimate claims. ". . . Defendant denies claims where obvious mechanical failures (i.e. a gear blowing . . . or gasket blowing) cause fluid leaks, claiming because fluid leaked it need not pay under the policy. Such denials make the policy illusory." Doc. 2 ¶ 15. Also, Buller alleges, "while Defendant advertises and claims that it will assist its insureds in the claims process, and properly investigate claims . . . in fact, Defendant does neither. It ignores evidence that supports claims being paid and exaggerates evidence that supports claim denials." *Id.* ¶ 17.

 As Risk Retention Group points out, Buller's complaint is somewhat unclear as to the specific monetary relief sought by the class, but given Buller's allegations that the cargo loss coverage sold by Risk Retention Group is "worthless, illusory and fraudulent," Doc. 2 ¶ 63, it is clear that the relief sought in this case exceeds $5 million in the aggregate. Considering, for example, Buller's claim for consumer fraud, the ordinary measure of damages in consumer fraud cases, as in cases alleging common-law fraud, is the "benefit of the bargain," that is, "the difference between the value of the item as represented and what the item purchased was actually worth." Mary Dee Pridgen, *Consumer Protection and the Law* § 6:4 (2002 & Supp.2005) (collecting cases). *See*

*also* 37 Am.Jur.2d *Fraud and Deceit* § 384, § 385, § 414, § 416 (1964 & Supp. 2006). In this case, under a benefit-of-the-bargain measure, Buller's consumer fraud claim is worth at least $100,000, the difference between BTC's per-vehicle limit on coverage for loss of refrigerated cargo under the Risk Retention Group policy and what the coverage, according to Buller, actually is worth, that is, nothing.

Even evaluating Buller's consumer fraud claim under an "out-of-pocket" measure of damages, *see* J.F. Rydstrom, Comment Note, *"Out of Pocket" or "Benefit of Bargain" as proper rule of damages for fraudulent representations inducing contract for the transfer of property,* 13 A.L.R.3d 875 (1967 & Supp.2006) (collecting cases), the claim is substantial. Buller alleges that she has been an insured of Risk Retention Group since 2003 and has paid premiums of over $14,000 per year, and has suffered a $35,000 loss in the form of a wrongfully-denied claim on her insurance for damage to refrigerated cargo, *see* Doc. 2 ¶ 19, ¶¶ 22–33, so that her out-of pocket loss is at least $77,000. A mere sixty-five class members asserting claims similar to Buller's would have, in the aggregate, damages in excess of $5 million.[1]

■ Also, Buller alleges that Risk Retention Group has engaged in a systematic, nationwide scheme of fraud against policyholders, *see, e.g.,* Doc. 2 ¶¶ 7–8, ¶¶ 68–69,

and seeks recovery under a consumer fraud statute that provides, as many such statutes do, for awards of punitive damages and attorney's fees. *See* 815 ILCS 505/10a(a), (c); *Smith v. Prime Cable of Chicago,* 276 Ill.App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1336 (1995). *See also* Pridgen, *Consumer Protection and the Law* § 6:16, § 6:17. These elements of damage must be reckoned into the amount in controversy in this case. *See Smith v. American Gen. Life & Accident Ins. Co.,* 337 F.3d 888, 892 (7th Cir.2003); *Del Vecchio v. Conseco, Inc.,* 230 F.3d 974, 978–79 (7th Cir.2000). In light of the substantial amount of Bullen's consumer fraud claim under either a benefit-of-the-bargain or out-of-pocket measure, a constitutionally-permissible award of punitive damages in a ratio of two or three times Buller's actual damages would amount to several hundred thousand dollars. *See Munro v. Golden Rule Ins. Co.,* 393 F.3d 720, 721–22 (7th Cir.2004); *Anthony v. Security Pac. Fin. Servs., Inc.,* 75 F.3d 311, 317–18 (7th Cir. 1996). A very small class asserting similar claims would have, in the aggregate, damages in excess of $5 million. The Court concludes that it is not "legally impossible" that the jurisdictional amount for CAFA purposes is satisfied in this case. *Brill,* 427 F.3d at 449. Therefore, the Court has jurisdiction over the claims of Buller and the putative class.[2]

---

1. The uncontroverted evidence submitted to the Court by Risk Retention Group establishes that the insurer has sold thousands of policies containing the policy language at issue in this case and has collected nearly $30 million in premiums for cargo loss coverage during the proposed class period. The record shows that between 1994 and 2005 Risk Retention Group sold 10,848 policies containing the policy language at issue and collected $29,330,996 in premiums for cargo loss coverage on those policies. *See* Doc. 44, Ex. 7 at 3–4.

2. For purposes of evaluating the existence of subject matter jurisdiction, the Court treats this putative multistate class action as though it has been certified as a class action. *See Fiore v. First Am. Title Ins. Co.,* No. 05–CV–474–DRH, 2005 WL 3434074, at **1–3 & n. 1 (S.D.Ill.Dec.13, 2005); *Garbie v. Chrysler Corp.,* 8 F.Supp.2d 814, 818 n. 3 (N.D.Ill. 1998). The Court notes in passing that, as a practical matter, this case seems to present certain difficulties as to class certification. The fact that the individual claims at issue in this case appear to be relatively large raises an issue as to whether a class action is a

## B. Voluntary Dismissal

Having resolved the issue of subject matter jurisdiction, the Court turns to the question of voluntary dismissal. Buller requests voluntary dismissal of this case on the grounds that it is duplicative of case number 05–165 and that judicial economy will be best served by dismissal of this case in favor of case number 05–165. The Court agrees that this case is duplicative of case number 05–165. Case number 05–165 is a proposed class action involving exactly the same parties and counsel as this case. The substantive allegations of the operative complaint in that case are identical to those of Buller's complaint in this case, and in both cases exactly the same claims for relief are asserted and the same proposed classes sought to be certified. Additionally, Risk Retention Group has asserted the same counterclaim in case number 05–165 that it asserts in this case.

■ The fact that this case is a putative class action requires the Court to determine whether the matter of voluntary dismissal is governed by Rule 23 or Rule 41 of the Federal Rules of Civil Procedure. A former version of Rule 23 of the Federal Rules of Civil Procedure provided that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs." *Gibson v. Aman Collection Serv., Inc.,* No. IP 00–1798–CT/G, 2001 WL 849525, at *3 (S.D.Ind. July 23, 2001) (quoting Fed.R.Civ.P. 23(e)). The language of Rule 23(e) was interpreted by this Circuit to apply to all class actions, including those not yet certified. *See Baker v. America's Mortgage Servicing, Inc.,* 58 F.3d 321, 324 (7th Cir.1995); *Glidden v. Chromalloy Am. Corp.,* 808 F.2d 621, 625–28 (7th Cir.1986); *Simer v. Rios,* 661 F.2d 655, 665 (7th Cir.1981); *Nagel v. ADM Investor Servs., Inc.,* 65 F.Supp.2d 740, 747 (N.D.Ill.1999). As amended in 2003, however, Rule 23(e) now provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a *certified* class." Fed.R.Civ.P. 23(e)(1)(A) (emphasis added). As the leading treatise on federal procedure observes, "[T]he 2003 amendments make clear that Rule 23(e) only applies to the 'claims, issues, or defenses of a certified class.' Thus, settlements or voluntary dismissals that occur before class certification are outside the scope of subdivision (e)." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1797 (1998 & Supp.2006) (footnote omitted). Therefore, the Court concludes that Buller's request for voluntary dismissal in this instance is governed not by Rule 23 but by Rule 41 of the Federal Rules of Civil Procedure.[3]

---

superior means of resolving the claims, given the interest class members may have in pursuing individual suits. *See* Fed.R.Civ.P. 23(b)(3)(A); *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 678 (7th Cir.2001); *Schwarm v. Craighead,* 233 F.R.D. 655, 664 (E.D.Cal. 2006). Similarly, multistate class actions entailing the application of the laws of numerous states are well known to present difficult questions regarding the predominance of common issues and manageability. *See* Fed. R.Civ.P. 23(b)(3), (b)(3)(D); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018–19 (7th Cir.2002); *Isaacs v. Sprint Corp.,* 261

F.3d 679, 682 (7th Cir.2001); *In re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1299–1302 (7th Cir.1995).

**3.** Also, the general purpose of applying Rule 23(e) to putative class actions is to avoid prejudice to unnamed members of a proposed class as a result of a voluntary dismissal. In *Glidden* the court explained,

Rule 23(e) was designed to prevent representative plaintiffs from settling or dismissing cases to the detriment of the absent members of the class. Settlement or dismissal of a case that has been certified as a

■ Rule 41 provides of course that, where, as in this case, a defendant has answered a complaint, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). Further, "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court." *Id.* "Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." *Id.* In this case, as noted, Risk Retention Group has filed a counterclaim. However, the Court concludes that the counterclaim does not defeat Buller's request for voluntary dismissal.

■ "In order to defeat the plaintiff's ability to dismiss under [Rule] 41(a)(2), the counterclaim may not be maintained for the sole purpose of preventing the plaintiff from dismissing the action. Furthermore, the assertion of an improper or insufficient counterclaim may not be the basis for denying the plaintiff's motion for voluntary dismissal. Thus, if the matter asserted by the defendant is not in fact a counterclaim but an affirmative defense or other matter, the plaintiff may still obtain a voluntary dismissal." 27A Fed. Proc., L.Ed. § 62:557 (2006) (footnotes omitted) (collecting cases). *See also Trustees of Chicago Painters & Decorators Pension, Health & Welfare & Deferred Sav. Plan Trust Funds v. Darwan,* No. 01 C 2458, 2006 WL 897942, at **3–4 (N.D.Ill. Mar.31, 2006) (a "counterclaim" that was merely a denial of liability to the plaintiff did not preclude voluntary dismissal under Rule 41(a)(2)); *Hinfin Realty Corp. v. Pittston Co.,* 206 F.R.D. 350, 354–55 (E.D.N.Y.2002) (a defendant's nominal "counterclaim" to an action by landowners to recover the costs of an environmental cleanup, stating that the cleanup was necessitated by the landowners' own negligence and that the landowners were strictly liable for cleanup costs of their own property, was an affirmative defense, not a counterclaim, and

class creates obvious dangers; the representative may have been a poor negotiator or may even be in cahoots with the defendant. These risks are present in the period before certification as well. Many class actions are settled in advance of formal certification, and in these some review is necessary .... Our opinion in *Simer* concludes that notice may be required by the due process clause of the fifth amendment even if not by Rule 23(e) .... The class allegation in the complaint gives the plaintiff some leverage in negotiations. It might be possible for a putative class representative to negotiate a handsome settlement for himself on condition that he dismiss the class portion of the complaint, leaving absent class members to fend for themselves. Wright and Miller believe that these risks justify reading "class action" in Rule 23(e) as applicable to all cases filed as class actions, unless the district court declines to certify the class.

808 F.2d at 626–27. *See also Crawford v. F. Hoffman–La Roche Ltd.,* 267 F.3d 760, 764–65 (8th Cir.2001) (when a class has not been certified, notice of voluntary dismissal is not required unless there is prejudice to unnamed members of the proposed class). In this case, the concerns discussed in *Glidden* are not present because, as noted, a parallel putative class action involving the same subject matter as this case is pending before the Court. Thus, dismissal of this action will not prejudice any unnamed member of the proposed class. *See Tyco Labs., Inc. v. Koppers Co.,* 82 F.R.D. 466, 469 (E.D.Wis.1979) (in a shareholder derivative action, the court permitted a dismissal without prejudice and did not require a hearing or notice to class members because the basis of the dismissal motion was to recommence the action in state court so that all class members could be represented).

did not preclude Rule 41(a)(2) dismissal); 9 Wright & Miller, *Federal Practice & Procedure* § 2365 ("To have any effect under Rule 41(a)(2) ..., the counterclaim must be a proper one. Thus, dismissal is not precluded by the fact that the defendants have pleaded affirmative defenses rather than counterclaims or that they intend in the future to offer a counterclaim but have not yet done so.") (footnotes omitted) (collecting cases).

 In this case Risk Retention Group's counterclaim asserts two counts. The first count alleges that Buller breached her contract of insurance with Risk Retention Group by failing properly to comply with policy terms by executing a proof of loss in connection with her claim arising from the July 29, 2003, cargo loss. The second count of the counterclaim alleges that Buller breached a settlement agreement with Risk Retention Group concerning her claim by bringing both this action and case number 05–165. The matters alleged in Risk Retention Group's purported counterclaim are affirmative defenses, not counterclaims. It is well settled that an insured's failure to comply with policy terms is an affirmative defense. *See S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 372–73 (4th Cir.2003) (an insurer's argument that an insured's breach of contract action was untimely under an insurance policy's two-year limitations provision was an affirmative defense required to be raised by the insurer in its responsive pleading); *Strickland v. Transamerica Ins. Co.*, 481 F.2d 138, 149 n. 12 (5th Cir.1973) (exclusions from coverage under an insurance policy must be pleaded as affirmative defenses); *Home Ins. Co., N.Y. v. Eisenson*, 181 F.2d 416, 419 (5th Cir.1950) (the defendants were obliged to plead the breach of a clause in an insurance policy requiring the insured to carry co-insurance as a defense); *State Farm Mut. Auto. Ins. Co. v. Koval*, 146 F.2d 118, 120 (10th Cir.1944) (an insured's breach of a co-operation clause in an automobile liability policy is an affirmative defense, and the burden of establishing it rests on the insurer); *Travelers Mut. Cas. Co. v. Rector*, 138 F.2d 396, 402–03 (8th Cir.1943) (in an action against a freight carrier's liability insurers on a judgment against the carrier for the death of the plaintiff's husband as a result of a collision between an automobile and the carrier's truck, it was incumbent on the defendants to plead breach of any of the subordinate provisions of the policy limiting liability upon which they intended to rely); *Carey Canada, Inc. v. California Union Ins. Co.*, 748 F.Supp. 8, 13–14 (D.D.C.1990) (an exclusion from coverage is an affirmative defense that must be set forth in an insurer's answer); *Rosenfeld v. Union Ins. Soc'y of Canton, Ltd.*, 157 F.Supp. 395, 396–97 (E.D.N.Y.1957) (in an insured's action to recover under policies protecting her from theft of certain personal property, the insurer pleaded, as a valid defense, the insured's failure to reveal her husband's alleged record of past arrests, detentions, and convictions of various crimes, as well as his poor financial condition and unfavorable record of civil litigation). Similarly, Risk Retention Group's claim that Buller breached a settlement agreement with the insurer is merely an affirmative defense of release. *See* Fed.R.Civ.P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively ... release[.]").[4]

 The Court concludes that the matters set out in Risk Retention Group's

---

4. The Court notes that the parties seem to dispute whether a release in fact was executed. The question is irrelevant. Assuming a release was validly executed, the release is a defense and thus not grounds to deny Buller's request for voluntary dismissal.

purported counterclaim in fact are affirmative defenses. "Affirmative defenses challenge ... underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim." *FDIC v. F.S.S.S.,* 829 F.Supp. 317, 322 n. 11 (D.Alaska 1993). In this case, the allegations of the counterclaim cannot be adjudicated separately from Buller's claims. *See MidAmerican Communications Corp. v. U.S. West Communications, Inc.,* 857 F.Supp. 772, 774 (D.Colo.1994) ("Unlike a counterclaim, a defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies."). At most Risk Retention Group's purported counterclaim sets out grounds for avoiding or reducing liability, but it establishes no grounds on which the insurer could recover damages independent of Buller's claim. *See Hinfin Realty Corp.,* 206 F.R.D. at 354–55 (allegations of contributory or comparative fault asserted an affirmative defense, not a counterclaim).

■■■■■ As Buller points out, the damages sought in the counterclaim are in fact the legal expenses Risk Retention Group has incurred as a result of having to defend this case and case number 05–165, which expenses are not recoverable as items of damage as a matter of both contract law, *see Chicago Coliseum Club v. Dempsey,* 265 Ill.App. 542, 1932 WL 2782, at \*\*4–6 (Ill.App.Ct.1932), and the familiar "American Rule" generally prohibiting shifting of attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 269–70, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *See also Hinfin Realty Corp.,* 206 F.R.D. at 354–55 (noting that "one factor supporting the finding that a pleading [is] an affirmative defense rather than a counterclaim [is] the fact that the pleader [can] obtain no judgment pursuant to the claim."). Indeed, Risk Retention Group admits as much, and concedes that

the basis for its purported counterclaim is 28 U.S.C. § 1927, authorizing awards of attorney's fees and costs against a party that vexatiously multiplies proceedings. While the record before the Court shows little evidence to support an award of sanctions under 28 U.S.C. § 1927, there is no reason why Risk Retention Group cannot move for such sanctions despite the voluntary dismissal of this case. *See Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077–79 (7th Cir.1987) (a court retains jurisdiction to award sanctions notwithstanding the dismissal of a case).

■■■■■ Having concluded that Risk Retention Group's purported counterclaim does not bar the voluntary dismissal of this case, the Court turns at last to the question of whether voluntary dismissal should be granted. The dismissal of a plaintiff's complaint without prejudice under Rule 41(a)(2) is within the sound discretion a court. *See Tyco Labs., Inc. v. Koppers Co.,* 627 F.2d 54, 56 (7th Cir.1980); *Stern v. Barnett,* 452 F.2d 211, 213 (7th Cir.1971); *Wisconsin Bell, Inc. v. MCIMETRO Access Transmission Servs., Inc.,* 218 F.R.D. 616, 618 (E.D.Wis.2002). "The district court abuses its discretion only when it can be established [that] the defendant will suffer 'plain legal prejudice' as the result of the district court's dismissal of the plaintiff's action." *United States v. Outboard Marine Corp.,* 789 F.2d 497, 502 (7th Cir.1986). *See also McCall–Bey v. Franzen,* 777 F.2d 1178, 1184 (7th Cir. 1985); *Belkow v. Celotex Corp.,* 722 F.Supp. 1547, 1552–53 (N.D.Ill.1989). In *Pace v. Southern Express Co.,* 409 F.2d 331 (7th Cir.1969), the court enumerated factors to consider in determining whether a defendant will suffer "plain legal prejudice" as a result of the dismissal of an action without prejudice, including, "the defendant's effort and expense of preparation for trial, excessive delay and lack of

diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Id.* at 334. "The enumeration of the factors to be considered in *Pace* is not equivalent to a mandate that each and every factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom the discretion ultimately rests." *Tyco Labs.*, 627 F.2d at 56. "[T]he very concept of discretion presupposes a zone of choice within which the trial court may go either way [in granting or denying voluntary dismissal]." *Outboard Marine Corp.*, 789 F.2d at 502 (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 971 (8th Cir. 1984)). *See also Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir.1988).

In this case, the relevant factors weigh strongly in favor of dismissal. Although this case has been pending in this Court since March 2005, it is not close to trial and procedurally is not at an advanced stage; in fact, most of the litigation in this case to date has been about the threshold issue of subject matter jurisdiction. Given the limited motion practice in this case thus far, it seems unlikely that Risk Retention Group has incurred great expense in defending the case, although it is apparent that the insurer will incur great expense if it is required to defend through trial the identical class actions presented by this case and case number 05–165. The Court does not find that Buller has been dilatory in seeking voluntary dismissal, as she moved promptly for dismissal of this case following the Seventh Circuit's reversal of the Court's Orders remanding this case and case number 06–165 to state court for lack of jurisdiction. No summary judgment motion has been filed in this case, and Buller has offered an excellent reason for voluntary dismissal, namely, that it is in the interests of the parties and the Court that the matters at issue in this case be decided in one action, not two parallel ones, and that this action should be dismissed so that the parties can proceed in case number 05–165. Any claims and defenses Risk Retention Group is entitled to assert against Buller can be, and in fact have been, asserted in case number 05–165, so that dismissal of this case will not cause any prejudice to the insurer. Therefore, the Court concludes in its discretion that voluntary dismissal should be granted.

## CONCLUSION

For all of the foregoing reasons, Buller's Motion to Dismiss Case and Counterclaims (Doc. 38) is **GRANTED**. This case is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to close the file in this case.

**IT IS SO ORDERED.**