**Elena del CAMPO, et al., Plaintiffs,**

v.

**AMERICAN CORRECTIVE COUNSELING SERVICES, INC., et al., Defendants.**

**No. C 01–21151 JW.**

United States District Court,
N.D. California,
San Jose Division.

Dec. 3, 2008.

Deepak Gupta, Public Citizen Litigation Group, Washington, DC, Lester A. Perry, Salt Lake City, UT, Paul Arons, Law Office of Paul Arons, Friday Harbor, WA, Ronald Wilcox, Attorney at Law, San Jose, CA, O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, for Plaintiffs.

Charles D. Jenkins, Dan Day Kim, Charles Edward Perkins, Jenkins, Goodman & Neuman, Martha A. Boersch, Attorney at Law, San Francisco, CA, David L. Hartsell, McGuirewoods LLP, Chicago, IL, Hugh Tabor Verano, Jr., Verano & Verano, San Juan Capistrano, CA, Susan L. Germaise, McGuirewoods LLP, Los Angeles, CA, Timothy P. Irving, Ross, Dixon & Bell, San Diego, CA, Eric Neil Landau, Jones Day, Irvine, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION

JAMES WARE, District Judge.

### I. INTRODUCTION

Plaintiffs bring this putative class action alleging, *inter alia,* that Defendants engaged in a pattern of behavior in implementing the District Attorney Bad Check Diversion Program[1] ("Diversion Program") that violates

---

1. In 1985, the California Legislature passed the Bad Check Diversion Act ("BDCA"), which created a misdemeanor diversion program to address the growing problem of accused bad check writers inundating the state's criminal courts. Cal. Pen.Code § 1001.60 *et seq.* The diversion

the California Constitution, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, as well as other related state statutory and tort laws. Plaintiffs allege that Defendants operated the Diversion Program unlawfully by using the names of local district attorneys, demanding fees, and using the threat of criminal prosecution to force bad check writers to comply with their payment demands.

Presently before the Court are Plaintiffs' Amended Motion for Class Certification (hereafter, "Amended Motion," Docket Item No. 643) and Plaintiffs' Supplemental Motion for Class Certification (hereafter, "Supplemental Motion," Docket Item No. 684). The Court conducted a hearing on September 15, 2008. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiffs' Motions for Class Certification.

## II. BACKGROUND

Plaintiffs are Elena del Campo ("del Campo"), Ashorina Medina ("Medina"), Lois Artz ("Artz") and Lisa Johnston ("Johnson") (collectively, "Plaintiffs"). Defendants are American Corrective Counseling Services, Inc. ("ACCS"), Don R. Mealing ("Mealing"), Lynn Hasney ("Hasney"), Mr. Green, R.D. Davis, Mr. Kramer, Mrs. Lopez, Inc. Fundamentals ("Fundamentals"), Fundamental Performance Strategies ("Strategies"), Fulfillment Unlimited ("Fulfillment") and ACCS Administration, Inc. ("ACCS Admin."), (collectively "ACCS").

### A. Factual Allegations

In a Second Amended Consolidated Complaint filed on December 22, 2006, Plaintiffs allege as follows:

Defendants engaged in a pattern of behavior in implementing the diversion program that violates Plaintiffs' constitutional and statutory rights. This pattern begins when bounced checks are referred to Defendants from various retail merchants for collection. (Second Amended Consolidated Complaint, hereafter, "Complaint," ¶¶ 69–70, Docket Item No. 283.) The merchants

originally refer checks to the District Attorney, who then decides whether or not the check writer should be referred to the diversion program. Upon referral, ACCS Defendants instruct the merchants not to communicate with Plaintiffs. ACCS Defendants also send Plaintiffs a letter purporting to be from the Santa Clara District Attorney's Bad Check Restitution Program or the Sonoma County District Attorney Bad Check Restitution Program ("Bad Check Programs"). The letter explains that Plaintiffs can avoid criminal prosecution for allegedly violating California Penal Code 476(a) by enrolling in the optional Bad Check Programs, without any admissions of guilt. (Complaint ¶¶ 72–73; Exs. 1, 15.) The letter also instructs Plaintiffs to make checks out to the Bad Check Program, listing fees currently owed from their bounced check, an administration fee of $35, and the diversion program fee. (Complaint ¶¶ 30, 39, 44, 64; Exs. 1, 4, 6, 8, 15.)

After receiving the letter, Plaintiffs either 1) tendered payments toward satisfying the original dishonored check, 2) tendered payments for the original check and the administration fee, or 3) did not send in any payment at all. (Complaint ¶¶ 34–68.) ACCS Defendants kept a portion of any payments tendered and informed the merchant that Plaintiffs tendered less than the full amount of the bounced check. As a result, Plaintiffs have not satisfied their debts to the merchants. *Id.* In all instances, Plaintiffs had no intentions of participating in the Bad Checks Program, never indicated such intentions, and never completed the Bad Check Program Enrollment Form. *Id.*

Plaintiffs were subsequently sent additional letters from ACCS Defendants. The letters: 1) indicated that Plaintiffs have failed to respond to the previous letters; 2) reiterated that Plaintiffs had the option of enrolling in the Bad Check Program and paying the balance of their

program is intended to provide a feasible alternative to criminal prosecution by offering bad check writers a chance to pay their debts and clear the incident reports against them without

risking criminal prosecution. Santa Clara and Sonoma Counties adopted the program and contracted ACCS to administer their respective programs.

"cases;" and 3) warned them that failure to comply could result in the District Attorney filing a criminal complaint. In all cases, Plaintiffs have not paid the full amounts ACCS Defendants claim they owe, nor have any of the Plaintiffs been prosecuted for writing bad checks. *Id.*

On the basis of the allegations outlined above, Plaintiffs allege six causes of action as follows: violation of (1) California Constitution, Article I, Section 1; (2) Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); (3) California Unfair Business Practices Act, Cal. Bus. & Prof.Code §§ 17200 *et seq.* (" § 17200"); (4) conversion; (5) fraudulent misrepresentation; and (6) negligent misrepresentation.

### B. *Procedural History*

This case is a consolidated case between *del Campo v. Kennedy*, Case No, 01–21151 JW and *Medina v. Mealing*, Case No. 03–2611 JW. In the original suit, Plaintiff del Campo filed a class action against Defendants for violations of her Due Process rights pursuant to 42 U.S.C. § 1983 and Art. I § 7 of the California Constitution. Plaintiff del Campo also alleged violations of the FDCPA and § 17200. Upon Defendants' motion, the Court dismissed del Campo's § 1983 and Art. I, § 7 causes of action with prejudice based on her failure to state a claim. In *Medina v. Mealing*, Plaintiff Medina also filed a class action against Defendants for violations of § 1983 and Art. I § 7. On February 1, 2006, the Court consolidated Plaintiffs' cases into the present action. (Order Granting Motion to Consolidate Case, Docket Item No. 161.) On December 5, 2006, the Court dismissed all federal claims for violations of Due Process under § 1983 and Art. I § 7 against all Defendants. The Court also dismissed District Attorney George Kennedy from the case.

On September 15, 2008, the Court held a hearing on Plaintiffs' Amended Motion for Class Certification. In Plaintiffs' Amended Motion and in argument at the September 15 hearing, Plaintiffs represented that they sought to bifurcate class certification by preliminarily seeking certification of a Rule 23(b)(2) injunctive class, and then seeking certification of a Rule 23(b)(3) damages class if the injunctive class could first successfully establish Defendants' liability. *See* Fed. R.Civ.P. 23(b)(2–3). Plaintiffs represented that their Amended Motion only moved to certify a Rule 23(b)(2) class because there was a possibility that Defendants might not be able to pay a potential judgment. The Court treated Plaintiffs' representations as an implied motion to bifurcate class certification. The Court denied Plaintiffs' implied motion on the ground that judicial economy militated against Plaintiffs' piecemeal approach, especially in light of the speculative nature of Plaintiffs' contentions regarding damages. (Order Denying Plaintiffs' Implied Motion to Bifurcate Class Certification, Docket Item No. 682.) The Court directed Plaintiffs to file a Supplemental Motion for Class Certification, in which Plaintiffs could move for concurrent certification of classes under both Rules 23(b)(2) and 23(b)(3).[2] (*Id.*)

Presently before the Court are Plaintiffs' Amended Motion for Class Certification and Plaintiffs' Supplemental Motion for Class Certification.

### III. STANDARDS

 The decision to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed.R.Civ.P. 23; *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1309 (9th Cir.1977). The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Dukes v. Wal–Mart, Inc.,* 509 F.3d 1168, 1176 (9th Cir.2007) (citing *Zinser v. Accufix Research*

---

**2.** In reviewing Plaintiffs' Motions, the Court found a conflict between the classes sought in their Amended Motion and those sought in their Supplemental Motion. The Court directed Plaintiffs to file a statement of clarification. (Docket Item No. 700.) Plaintiffs clarified that the classes sought in their Supplemental Motion are operative and have superseded the classes sought in the Amended Motion. (*See* Docket Item No. 702.) Accordingly, for purposes of class definition, the Court relies on Plaintiffs' Supplemental Motion.

*Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001)). A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

 In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975)). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992) (citation omitted). In fact, "courts are not only at liberty to but must consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case." *Dukes,* 509 F.3d at 1178 n. 2 (internal quotations and citation omitted).

## IV. DISCUSSION

Plaintiffs seek to certify one "Umbrella Class" and three consumer subclasses on the issues of liability and declaratory and injunctive relief. (Supplemental Motion at 2–3.) Plaintiffs define the Umbrella Class as "[a]ll persons to whom ACCS mailed at least one demand letter purporting to be from a district attorney's office in California, attempting to collect a dishonored check, which was not returned as undeliverable." (*Id.* at 2.) The first subclass is the "FDCPA Class," which consists of "[a]ll members of the Umbrella Class, from whom ACCS after December 11, 2000 attempted to collect, or collected money for a check written for personal, family, or household purposes." (*Id.*) The second subclass is the "CUBPA Class," which con-

sists of "[a]ll members of the Umbrella Class from whom ACCS attempted to collect, or collected money, after December 11, 1997." (*Id.* at 3.) The third subclass is the "Bank Records Class," which consists of "[a]ll members of the Umbrella Class whose bank records ACCS obtained after December 11, 1999." (*Id.*)

### A. Rule 23(a) Certification

Defendants oppose class certification on the grounds that Plaintiffs fail to demonstrate (1) typicality and (2) adequate representation, as required by Rule 23(a). The Court considers the appropriateness of certification in the context of the Umbrella Class as well as the subclasses.

Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998) (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

The Court considers each factor in turn.

### 1. Numerosity

 Plaintiffs contend that the putative Umbrella Class and three subclasses satisfy the numerosity requirement of Rule 23(a). (Amended Motion at 11.) Although Defendants do not implicitly contest class certification on the basis of numerosity,[3] the Court examines this factor for completeness.[4]

---

3. While Defendants do not oppose certification based on lack of numerosity, Defendants do make a variety of arguments relating to the overall size of each putative subclass based on statutes of limitations, and other factors. The Court finds that this is not the appropriate time to

address these issues, because none of them will defeat overall class certification.

4. Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's ad-

■ "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon*, 150 F.3d at 1019. A class of one thousand members "clearly satisfies the numerosity requirement." *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D.Cal.1978).

■ In this case, Plaintiffs have provided statistical data on each subclass in support of the numerosity requirement. (Declaration of Paul Arons in Support of Motion for Class Certification, Exs. 17–18, hereafter, "Arons Decl.," Docket Item No. 571.) This information, collected in response to interrogatories sent to ACCS, indicates that ACCS sent over 900,000 letters in response to bad checks written in California from December 12, 1997 through 2007. (*Id.*) With respect to the FDCPA subclass, Plaintiffs contend that 667,574 of these letters date back to December 12, 2000, the earliest date within the FDCPA statute of limitations. (*Id.*) With respect to the CUBPA subclass, Plaintiffs contend that all 900,000 letters are included in the class, because the CUBPA statute of limitations extends to December 12, 1997. (*Id.*) Finally, "tens of thousands" of check writers are alleged to be in the Bank Records subclass, because Defendants requested the bank records of check writers from whom they do not successfully collect; and Defendants successfully collect on less than half the checks in their system. (*Id.*)

Accordingly, the Court finds that Plaintiffs have met the numerosity requirement of Rule 23(a) for the Umbrella Class and for each of the three subclasses.

### 2. Commonality

Plaintiffs contend that the commonality requirement of Rule 23(a) is met because there are questions of law and fact common to the Umbrella Class and each subclass. (Amended Motion at 11.) Defendants also do not implicitly contest that Plaintiffs have satisfied the commonality requirement.

■ Rule 23(a)(2) requires that class certification be predicated on "questions of law or fact common to the class." This requirement "has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

■ In this case, there are both questions of law and fact, which are common to members of the putative classes. With respect to factual commonality, Plaintiffs allege that (1) they all received standardized letters or phone calls from ACCS falsely purporting to be from a local District Attorney; (2) the letters contained false threats of prosecution and unlawful collection demands, (3) the letters contained misrepresentations regarding their source and the consequences of nonpayment; and (4) ACCS sought Plaintiffs' bank records. (Amended Motion at 13, 19.) The fact that there may have been some differences on a county-by-county basis in the specifics of the letters merely indicates permissibly "divergent factual predicates." *See Schwarm v. Craighead*, 233 F.R.D. 655, 661 n. 7 (E.D.Cal.2006) (holding, in a similar class action against an ACCS-like bad check program, the fact that "different letters were sent in different counties" did not defeat commonality under the Ninth Circuit's *Hanlon* standard).

With respect to legal commonality, Defendants are asserting a common defense, to the effect that their debt collection practices are authorized by the BDCA and are within the lawful limits of the FDCPA. (Amended Motion at 14; Defendants' Brief in Opposition to Plaintiffs' Amended Motion for Class Certification at 2–5, hereafter, "Opposition to Amended Motion," Docket Item No. 653.) Indeed, any issues surrounding the scope of the BDCA and FDCPA as applied to the activities of a private actor like ACCS will implicate Defendants' liability for the debt collection practices at issue in this case.

Accordingly, the Court finds that Plaintiffs have met the commonality requirement of Rule 23(a)(2) for the Umbrella Class and for each of the three subclasses.

missions." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir.2003).

### 3. Typicality

At issue is whether the named Plaintiffs bring claims that are typical of those of the overall class in satisfaction of Rule 23(a)(3). Defendants contend that Plaintiffs have not met the typicality requirement because the collection letters sent by Defendants contained "significant differences" on a county-by-county basis. (Opposition to Amended Motion at 10–11.)

 Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Like the commonality requirement, the typicality requirement is permissive: "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. The test is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508.

 In this case, the crux of Plaintiffs' class-wide allegations is that the collection letters all "contain representations that: (1) the letter is from the local District Attorney, who has reviewed a criminal complaint made by the recipient of a dishonored check; (2) check writers who do not choose 'diversion' face a real risk of prosecution; and (3) to avoid prosecution, the check writer must pay the check, plus enumerated fees, and attend a 'Financial Accountability' Class." (Amended Motion at 15.) Furthermore, Plaintiffs contend that none of the letters contain FDCPA-mandated disclosures. (*Id.*) With respect to the smaller Bank Records subclass, represented by Elena del Campo, Plaintiffs allege that Defendants followed a standard operating procedure in obtaining Plaintiff del Campo's bank records. (*Id.*)

In a similar case with common class definitions, a court in the Eastern District of California found typicality where a defendant check collector had sent "demand letters under the 'color of law,' by demanding fees based on alleged statutory authorization, by allegedly making fraudulent and negligent misrepresentations with putative plaintiffs … and by requesting bank records based on alleged statutory authorization." *Schwarm,* 233 F.R.D. at 661. In finding typicality, the court was unpersuaded by the defendant's contention that it had sent different letters to bad check writers in different counties. *Id.* at 662 n. 10.

Likewise, the Court finds that the claims made by the named Plaintiffs are "reasonably coextensive" with those made by the broader class, despite the fact that the specifics of ACCS's Bad Check Program varied by county. *See Hanlon,* 150 F.3d at 1020. Defendants' purported misconduct was not uniquely directed at the named Plaintiffs, but is alleged to have caused injury to other members of the proposed classes. *See Hanon,* 976 F.2d at 508. The non-unique course of conduct alleged includes the standard collection program, improper representations regarding law enforcement and prosecution, unlawful fee demands, and lack of legally required disclosures.

Accordingly, the Court finds that Plaintiffs have met the typicality requirement of Rule 23(a)(3) for the Umbrella Class and all three subclasses.

### 4. Adequacy of Representation

Plaintiffs contend that the four representatives—Elena del Campo, Ashorina Medina, Lisa Johnston and Lois Artz—are adequate class representatives and that class counsel is also adequate as required by Rule 23(a)(4). (Amended Motion at 16–17.) Defendants contend that the representative Plaintiffs are inadequate for a variety of reasons and that class counsel is inadequate on conflict-of-interests grounds. (Opposition to Amended Motion at 11–17.)

 The fourth predicate for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Two factors are considered when determining the adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their

counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

■ Defendants' primary attacks on the adequacy of the four representative Plaintiffs relate to Plaintiffs' alleged "lack of honesty and trustworthiness" or their lack of understanding of the claims involved in this action. (Opposition to Amended Motion at 11–15.) The "lack of honesty" allegation is based on the fact that Plaintiffs wrote bad checks, as well as on culpable mental states Defendants attribute to Plaintiffs based on the circumstances under which those bad checks were written. Given that "all class members must, by definition, have written a bad check," a class action would be impossible if the Court were to condemn class representatives on the basis that they wrote bad checks. *See Schwarm*, 233 F.R.D. at 662. Additionally, the scope of Plaintiffs' alleged financial irresponsibility or culpability is not relevant to a determination of Defendants' liability. The Court finds nothing to suggest that these Plaintiffs, alleging that they have been wronged by Defendants' conduct, will not prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020.

With respect to Defendants' contentions regarding Plaintiffs' understanding of the case, the allegations seem to be that Plaintiffs are ignorant of the legal matters at issue, are fed information by their lawyers, and generally leave their lawyers to run the case. (Opposition to Amended Motion at 13–15.) Defendants' contentions are perplexing since Plaintiffs are lay people who are not authorized to practice law and thus would not be required to know the "legal matters" at issue. This is precisely why Plaintiffs have engaged professional legal counsel in the first instance. Thus, the Court is satisfied that Plaintiffs are voluntarily participating in this case based on their belief that they were wronged by ACCS's conduct and their desire to prevent ACCS from engaging in the alleg-

edly unlawful check collection practices in the future.[5]

Finally, Defendants attack the adequacy of Plaintiffs' counsel on the ground that their "lobbying efforts [against unlawful check collection practices] presents (sic) a fundamental conflict of interest that precludes them from being appointed as class counsel."[6] (Opposition to Amended Motion at 16.) Defendants, however, cite no case law in support of the proposition that an attorney's role as a legislative advocate precludes the attorney from adequately representing a plaintiff class in a case relating to the same subject matter as the attorney's legislative activities. The Court finds no conflict of interest sufficient to deny class certification in counsel's dual role as a legislative advocate and a litigation counsel.

Accordingly, the Court finds that the named Plaintiffs and class counsel adequately represent the Umbrella Class and the three subclasses under Rule 23(a)(3).

In sum, the Court finds that Plaintiffs have met all four requirements-numerosity, commonality, typicality, and adequate representation-such that class certification is proper under Rule 23(a).

### B. *Rule 23(b) Certification*

Plaintiffs move for hybrid certification of a Rule 23(b)(2) class on the issues of injunctive and declaratory relief and statutory damages, and a Rule 23(b)(3) class on the issue of actual damages. (Supplemental Motion at 3; Amended Motion at 18.)

Generally, plaintiffs must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b), which requires that (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is supe-

---

**5.** (*See* Declaration of Lois Artz, Lisa Johnston, Ashorina Medina, and Elena del Campo in Support of Motion for Class Certification, Docket Item Nos. 573–576.)

**6.** The Court DENIES as moot Defendant's Evidentiary Objections to Second Declaration of

Paul Arons in Support of Plaintiffs' Amended Motion for Class Certification. (Docket Item No. 673.) The Court did not rely on Mr. Arons' Declaration in reaching its decision on Plaintiffs' Motion.

rior to other available methods of adjudication. Fed.R.Civ.P. 23(b).

Numerous courts have certified hybrid classes under Rules 23(b)(2) and 23(b)(3) in cases involving the FDCPA. *See, e.g. Schwarm*, 233 F.R.D. at 662–64; *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 512 (N.D.Cal.2007); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 596–97 (E.D.Cal.1999).

## 1. Rule 23(b)(2) Certification

Plaintiffs move for class certification under Rule 23(b)(2), and seek a determination of Defendants' liability, followed by injunctive relief under CUBPA §§ 17203–04 and declaratory relief and statutory damages under the FDCPA. (Amended Motion at 18; Supplemental Motion at 6.) Plaintiffs move for certification under Rule 23(b)(2) even though Plaintiffs' Complaint seeks statutory damages under the FDCPA, as well as actual damages resulting from Defendants' conduct.[7]

Defendants contend that certification under Rule 23(b)(2) is inappropriate because (1) equitable relief is not a remedy under the FDCPA [8] and (2) money damages are not incidental to the equitable relief sought by Plaintiffs. (Opposition to Amended Motion at 5.)

■ Notably, "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive relief or declaratory relief, but may include cases that also seek monetary damages." *Schwarm*, 233 F.R.D. at 663 (quoting *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 n. 3 (9th Cir.1986)). In order for certification to be

proper under Rule 23(b)(2), however, injunctive and declaratory relief must predominate over monetary relief. *Molski v. Gleich*, 318 F.3d 937, 949–50 (9th Cir.2003).

■ In this case, Plaintiffs allege that Defendants acted on grounds "generally applicable" to the class, because Defendants unlawfully mailed standardized form letters to all class members. Fed.R.Civ.P. 23(b)(2). In each case, Plaintiffs contend that Defendants inappropriately relied on the BDCA and that Defendants falsely acted under the banner of the District Attorney's Office. (Amended Motion at 19.) Plaintiffs also allege that the letters contained false threats of prosecution, unlawful collection demands, and misrepresentations regarding their source and the consequences of non-payment. (*Id.*) Plaintiffs seek a declaration of Defendants' liability for these prior standardized actions, and seek to enjoin Defendants from continuing this business model in the future. (*Id.*)

The Court finds that Plaintiffs allege the type of "generally applicable" conduct on the part of Defendants that is appropriate for class certification under Rule 23(b)(2). Here, "each putative member was subject to Defendants' collection efforts that were purportedly made pursuant to statutory authorization under the BDCA." *Schwarm*, 233 F.R.D. at 663. Plaintiffs contend that a primary goal of this litigation is to stop Defendants from engaging in their allegedly unlawful debt collection practices. (*See* Reply to Amended Motion at 4–5; Reply Memorandum in Support of Supplemental Motion for Class Certification at 3, hereafter, "Reply to Supplemental Motion," Docket Item No. 692.) Indeed, Plaintiffs attempted to delay certification of a

---

7. Statutory damages under the FDCPA are limited to one percent of a defendant's overall net worth, and are divided among all class members. 15 U.S.C. § 1692(k). In cases where both statutory and actual damages are alleged under the FDCPA, courts have certified hybrid 23(b)(2)/ 23(b)(3) classes, with 23(b)(3) treatment deemed appropriate for class members alleging actual damages. *See Schwarm, 233 F.R.D. at 663–64.*

8. Plaintiffs fully concede that injunctive relief is not a remedy under the FDCPA. (Reply at 6.) Injunctive relief, however, is authorized under the CUBPA. Cal. Bus. Prof.Code §§ 17203–04. Furthermore, an FDCPA violation serves as a

predicate for liability under the CUBPA. *See Id.* § 17200. Finally, declaratory relief under Rule 23(b)(2) has served as a basis for certifying mixed FDCPA/CUBPA class actions, such as the one here. *See, e.g., Irwin v. Mascott*, 112 F.Supp.2d 937, 957–57 (N.D.Cal.2000); *see also Schwarm*, 233 F.R.D. 655 (certifying a 23(b)(2) class in an FDCPA case, where injunctive and declaratory relief predominated over damages). The relief Plaintiffs seek, therefore, is permissible under the CUBPA and FDCPA, and is appropriate relief in class actions arising under those statutes.

Rule 23(b)(3) class, and initially only sought certification of a Rule 23(b)(2) class in light of Defendants' alleged inability to pay a prospective judgment.

In sum, the damages sought by Plaintiffs through a Rule 23(b)(2) class are incidental to injunctive and declaratory relief. As noted, *supra*, statutory damages under the FDCPA in class actions are limited to one percent of a defendant's net worth. In this case, Plaintiffs proposed classes include recipients of approximately 900,000 letters mailed by Defendants between 1997 and 2007. This means that, pursuant to the terms of the FDCPA, hundreds of thousands of class members would share in statutory damages in an amount equivalent to a mere one percent of Defendants' net worth.[9] In addition, because roughly 60% of putative class members did not actually pay the allegedly unlawful fees charged by Defendants, actual damages are not available to a vast number of Plaintiffs. (*See* Supplemental Motion at 7.) As such, any remedy due to this majority of class members would consist only of equitable forms of relief and a small amount of statutory damages. Ultimately, if Defendants are found to have acted unlawfully, all Plaintiffs will benefit from an adjudication of Defendants' liability and from corresponding injunctive relief, regardless of whether any Plaintiffs will recover anything more than a nominal amount of damages.

Accordingly, class certification is proper under Rule 23(b)(2).

### 2. Rule 23(b)(3) Certification

Plaintiffs contend that certification is also proper under Rule 23(b)(3) because (1) common questions of law and fact predominate over individual issues and (2) a class action is a superior method of adjudicating this dispute. (Supplemental Motion at 9–10).

Certification under Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R.Civ.P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. In order to determine whether a class action is superior to individual action, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt*, 241 F.R.D. at 514 (citing *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231).

Here, as discussed in Section A.2, *supra*, the Court has found that there are numerous common questions of law and fact. Just as "[p]redominance is a test readily met in certain cases alleging consumer ... fraud,"[10] the Court finds that this case involves largely predominate issues of law and fact involving Defendants' alleged standardized conduct and whether that conduct amounts to actionable misrepresentations. *See Schwarm*, 233 F.R.D. at 663.

The Court also finds that a class action is the superior method to adjudicate Plaintiffs' claims.[11] First, the FDCPA specifically au-

---

**9.** Plaintiffs contend that Defendant ACCS has represented its net worth to be $180,517. (Amended Motion at 17.) If this is indeed the case, the entire class of Plaintiffs would share $1805 between them as a measure of statutory damages under the FDCPA.

**10.** *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231.

**11.** The Court notes Defendants' contentions that a class action is not superior because (1) the class action device may subject class members to criminal prosecution for bad check writing; and (2) certification greatly reduces the amount of statutory damages awarded to the individual

Plaintiffs. (*See* Defendant ACCS's Brief in Opposition to Plaintiffs' Supplemental Motion for Class Certification at 11, Docket Item No. 687.) As to the first contention, the Court finds it disingenuous for Defendants, who are private parties, to threaten adverse criminal action against Plaintiffs, despite articulating no clear basis or authority for making such a threat. As to the second contention, the Court finds it unlikely that any significant number of potential individual plaintiffs would pursue a lawsuit of this type. *See* 15 U.S.C. § 1692k(a)(2); *Hunt*. 241 F.R.D. at 514.

thorizes class actions. *See* 15 U.S.C. § 1692k(a)(2). As with other FDCPA class actions, this case involves hundreds of thousands of individual class members, each of whom are alleged to have suffered a relatively small amount of actual damages.[12] *See Hunt,* 241 F.R.D. at 515. Second, the analysis applied in *Schwarm* is equally persuasive in this highly analogous case. In *Schwarm,* the court noted that "[n]ot only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually." 233 F.R.D. at 664 (quoting *Ballard,* 186 F.R.D. at 600): *see also Hunt,* 241 F.R.D. at 514. In sum, given the extent of common issues confronting Plaintiffs and the overall desire for consistent judgments, taken together with the individually small amounts of damages at issue in this case, judicial economy warrants consolidating all of Plaintiffs' claims into a single class action. *See id.*

Accordingly, the Court finds that class certification is proper under Rule 23(b)(3) for class members having claims for actual damages.

### V. CONCLUSION

The Court GRANTS Plaintiffs' Motions for Class Certification and certifies Plaintiffs' classes for injunctive and declaratory relief, restitution, and statutory damages under Rule 23(b)(2) and for actual damages under Rule 23(b)(3). The Court certifies Plaintiffs' Umbrella Class, FDCPA Subclass, CUBPA Subclass, and Bank Records Subclass as follows:

(1) Umbrella Class: All persons to whom ACCS mailed at least one demand letter purporting to be from a district attorney's office in California, attempting to collect a dishonored check, which was not returned as undeliverable.

(2) FDCPA Subclass: All members of the Umbrella Class, from whom ACCS after December 11, 2000 attempted to collect, or collected money for a check written for personal, family, or household purposes.

(3) CUBPA Subclass: All members of the Umbrella Class from whom ACCS attempted to collect, or collected money, after December 11, 1997.

(4) Bank Records Subclass: All members of the Umbrella Class whose bank records ACCS obtained after December 11, 1999.

On or before **December 22, 2008,** the parties shall file a proposed form of class notice and a joint proposal for dissemination of notice.

---

**12.** Plaintiffs allege actual damages ranging from "a few dollars to just over two hundred dollars for each class member." (Reply to Supplemental Motion at 11.)